WILLIAMS v. KOEHLER et al.

(Supreme Court, Appellate Division, Second Department. June 20, 1899.)

1. NEGLIGENCE OF EMPLOYE—COURSE OF EMPLOYMENT—UNTIED TEAMS.
An owner of a team is responsible for injuries caused by his employé's leaving the team unattended and untied in a street of a populous city while visiting a sick friend, though the employé had deviated two blocks from his course to reach his friend's house.

2. SAME—PROXIMATE CAUSE—NEGLIGENCE OF BYSTANDER.
One leaving a team unattended and untied in a street of a populous city is liable for injuries to a child caused by a bystander's negligence in attempting to drive it to a place of safety after it had wandered into the middle of the street.

Appeal from trial term.

Action by Edward Williams, an infant, by Anton Williams, his guardian ad litem, against H. Koehler & Co. From a judgment for plaintiff and an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Robert Thorne, for appellants.

Frederick E. Crane, for respondent.

CULLEN, J. The action is to recover damages for personal injuries. The plaintiff, a boy seven years old, was standing at the edge of the sidewalk, by the side of a coal box which stood there, looking at other boys playing in the street. There was a push cart in the carriageway, immediately in front. The driver of one of defendant's beer trucks left his truck and team standing unattended in the street in front of a saloon near by while he went in to see a sick friend. During the driver's absence the horses started, and when they had gone from 20 to 40 feet a stranger stopped the team and drove them back to the saloon. In so doing he drove the truck against the push cart, which, being overturned, threw the boy against the coal box. The driver of the truck testified that he was on his return to the brewery, having delivered all the beer, and his truck being full of empty kegs. He further stated that where the accident occurred was not on his direct route to the brewery, but that he had deviated from his course for a couple of blocks for the sake

of stopping to see a friend. The only questions that it is neces-
sary to consider upon this appeal are raised by the denial of the
defendant's motion to dismiss the complaint, and a refusal to charge
one request. The motion for a nonsuit was based on two grounds:
First, that, by his deviation from the direct course to the brewery,
the driver had ceased to be in the discharge of his master's service;
second, that the master was not liable for the act of the stranger
who caught the horses and returned them to the saloon.

The first objection to the recovery raised by the appellant is clearly
untenable. The duty of the driver's employment required him to
drive the truck back to the brewery. Though he deviated from his
direct road, still the conduct and management of the team on the
course he took were none the less services in the course of his em-
ployment. At most, his acts constituted misconduct in his employ-
ment, not an abandonment of it. The case is not at all similar to
one where the servant takes his master's team for a purpose unau-
thorized and solely his own. In such a case the driver would not
be acting in the service of his master. But here the driver did not
take the truck as a vehicle or means of transporting himself the two
blocks he went out of his way, but, intending to go to see his friend,
and at the same time intending to return the truck to the brewery,
as was his duty, he drove the truck over the route adopted for the
very purpose of continuing his service, in taking charge of the team
and truck, and not for his own purposes. The case falls within that
of Quinn v. Power, 87 N. Y. 535, where it was held that the owner
of a ferryboat was liable for the negligence of the pilot in charge,
though the pilot deviated from his course to permit a person whom
he had taken gratuitously as a passenger to board a vessel in the
river. It is true that the act of the driver in going into the saloon
was not in his master's service. For that reason, had he, while
entering the saloon, by his carelessness run against and injured any
one, the master would not have been liable. It was not the going
into the saloon that caused the accident, but leaving the horses un-
attended and untied; and this was negligence in the master's busi-
ness, for it was the duty of the master not to leave his team unse-
cured.

We are also of opinion that the defendant was responsible for
the conduct of the stranger who stopped the team and drove the
truck to the saloon. The question of what is the proximate and effi-
cient cause of an accident is often the occasion of somewhat meta-
physical distinctions, and the subject of diverse opinions. Of late
years the tendency of the authorities has been to refer the accident
to the original fault which set in motion the circumstances culminat-
ing in the injury. Shear. & R. Neg. § 30. In Lowery v. Railway Co.,
99 N. Y. 158, 1 N. E. 608, coals carelessly dropped from an engine
of the railroad fell upon a horse in the street, rendering him un-
manageable. The driver, to stop the horse, drove him against the
curb, injuring the plaintiff. It was held that an error of judgment
on the part of the driver as to the proper course to adopt in an
emergency that had occurred would not relieve the railway company
from liability. The question in this case is somewhat broader than

that in the one cited. The court was asked to charge that the defendant was not liable for the negligence of the stranger who seized the team. This was refused, and the defendant excepted. We have therefore to determine whether the rule is the same in the case of the intervening negligence of a third party as in the case of a mere error of judgment. We think that depends on the nature of the occurrence. Here, the horses having started, there arose a great risk that serious accidents might occur. This certainly justified any bystander in stopping the horses. Now, if the whole emergency or peril had then ceased, from that time the defendant would not have been responsible for the acts of the stranger. But it had not then ceased. The team and truck could not be left in the middle of the carriageway, obstructing public travel, besides subjecting other travelers on the highway to danger. The same condition that authorized the bystander to stop the horses also authorized him to drive the team and truck to a position where they would cease to be an obstruction and menace to public travel. We think that one of the dangers to be fairly anticipated from leaving horses unattended in a street is that, if they start to run off, the persons who attempt to stop them may be careless or ignorant of the management of horses, and thus jeopardize the safety of people on the highway. It is settled by authority that, where one leaves a horse unattended and untied in a populous city, he may be held responsible for accidents occasioned by the horse running away, even though the runaway is caused by boys throwing missiles. McCahill v. Kipp, 2 E. D. Smith, 413; Pearl v. McCaulay, 6 App. Div. 70, 39 N. Y. Supp. 472. In such cases the leaving the horses unattended is regarded as the proximate cause of the accident. We cannot see any difference in principle between those cases and the one before us.

The judgment and order appealed from should be affirmed, with costs. All concur.