THE ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY
V. CHARLES R. JUSTICE.

No. 15,954.

### SYLLABUS BY THE COURT.

1. DAMAGES—*Negligence*—*Proximate Cause.* Negligence or other
   unintentional wrong does not furnish a foundation for a
   cause of action for damages unless it was the proximate cause
   of the injury sustained.

2. ——— *Proximate Cause.* "The proximate cause of an injury
   is that cause which, in natural and continuous sequence, un-
   broken by any efficient intervening cause, produces the injury,
   and without which the result would not have occurred."

3. ——— *Proximate and Remote ‧ Causes.* "If two distinct
   causes are successive and unrelated in their operation, one of
   them must be the proximate and the other the remote cause.
   In such case, the law regards the proximate as the efficient
   and responsible cause, and disregards the remote."

Appeal from Johnson district court; WINFIELD H.
SHELDON, judge. Opinion filed April 10, 1909. Re-
versed.

### STATEMENT.

THIS action was commenced in the district court of
Johnson county, by Charles R. Justice, to recover dam-
ages for injuries received while in the employment
of the St. Louis & San Francisco Railroad Company.
The injuries were sustained February 8, 1907. This
action was commenced September 21, 1907.

Mr. Justice was employed as a section-hand, under a foreman by the name of George Nelson. The section upon which he was employed extended from Olathe south about six miles. On the morning of February 8 the foreman, with a crew of five men, including the plaintiff, started south with two hand-cars. The foreman and three of the crew were on the car in front, and the plaintiff and C. E. Hill were on the car following. The cars ran close together. When about two miles from Olathe they discovered a train coming from the south. It proved to be a Missouri, Kansas & Texas passenger-train which ran regularly over that road, and was then running on schedule time. The hand-cars were stopped and the foreman said: "We will take this hand-car off here; and the other we will take back to the private crossing." The plaintiff and Hill, without further orders, rolled their car back to the crossing indicated by the foreman, which was fifty to sixty yards distant, and proceeded to take it off the track. They expected a man from the other car to follow them and help move their car, but did not wait for him. The approach to the crossing was a little steep. They lifted one end of the car off the track, and when on the ground it pointed down-hill. The plaintiff was standing at that end. When the wheels were all off the rails the car was inclined to go down the approach. The ground was frozen and had thawed enough to make the surface quite slippery. On this account the plaintiff could not maintain his foothold so as to prevent the car from going down-hill, and for the same reason Hill was unable to render much assistance. In spite of their efforts to hold the car it crowded the plaintiff down the side of the grade. In his attempt to check the car he lost his balance, fell, and was run over and seriously injured. A man from the other car reached them about the time the injury was completed, and assisted in extricating the plaintiff from under the car. He was taken to the railway hospital, where he remained more than two months.

On April 2, 1907, plaintiff made a written statement to the defendant's claim agent, describing how the injury occurred, which reads:

"STATEMENT OF CHARLES JUSTICE.

"SPRINGFIELD, MO., April 2, '07.

"At the time I was injured near Olathe, Kan., on February 8, 1907, I was working on section under foreman George Nelson.

"On leaving Olathe in the morning we had an extra hand-car that we were to take to Bonita for the gang working south of our gang, and for something like a mile back toward Olathe from point where accident occurred. Charley Hill and I were the only men on the regular car, Foreman Nelson and the other men all being on the extra car. They were in front, and Hill and I followed them closely.

"When we were out about two miles from Olathe a passenger-train (I think 106) showed up about one mile south of us, and on seeing the train approaching Foreman Nelson remarked to the men on both cars that we would set the car he was on off at the point where it was then stopped, and that we would run the one Hill and I were on back to a private crossing, about fifty or seventy-five yards, on account of not being room to put both cars off at the same place.

"I did not understand from Nelson's remark that he intended for Hill and I to take the car back and put it off alone, but Hill and I voluntarily rolled the car back to the crossing while Nelson and the other men were putting the other car off, and in getting the car off I was injured.

"When we got back to the crossing I told Hill to put his weight on the rear end of the car, and that I would take hold of the forward end and in this way we would take the car off.

"After turning the car around and starting to roll it away from the track we managed it all right until the hind wheels dropped down off the rail, and then the car gave a lurch forward, and, as there was snow and ice on the ground, I was unable to stop the car, and I lost my balance and fell when I stepped back into a ditch, and the car followed after me into the ditch and one of the handles at the front end of the car struck against my right foot and ankle, and I have been unable to put my foot to the floor yet.

"As I remember, Nelson and the other men had put the front car off and were on their way back toward Hill and I at the time I was injured.

"Two men can put a car like this one off at that crossing without any difficulty, as it was not a heavy car, and there was not much of a load on it.

"The train was not so close but what we might have waited for Nelson and the other men to have assisted us, but there was no apparent reason for doing this.

"I consider that my injury was purely the result of an accident, and that neither Nelson nor any of the men were in any way to blame for it. There was no defect about the car or track that I know of, and I know of no reason for saying that the company is to blame for my injury, but, as I was working for the company's interest at the time I was injured, I feel that the company ought to pay me for time lost.

"I am 56 years old, married, live in Olathe, and have been working for Frisco at different times for the past ten years.

"I have read the above and find it true.

(Signed)    C. R. JUSTICE."

During the trial, on cross-examination concerning this statement, he said:

"Ques. In reference to this statement, when you wrote on this, 'I have read the above and find it true,' you did read the statement? Ans. Yes, sir.

"Q. It was true, what you state in here? A. Yes, sir.

"Q. You say now it is true what was read to you? A. I say it is true; yes, sir."

The description given in the petition of how the injury occurred is substantially the same as the statement of the plaintiff herein given. The plaintiff testified on the trial, in part, as follows:

"Ques. And Hill got on the hind end and you said you would take it at the front end? Ans. Yes, sir.

"Q. After turning the car around you started to roll it away from the track and managed it all right until the hind wheels dropped off the rail—that is correct? A. Yes, sir.

"Q. [Reading from the statement:] 'And then the car gave a lurch forward, and, as there was snow and

ice on the ground, I was unable to stop the car'—is that right? A. Yes, sir.

"Q. 'And I lost my balance'? A. The car shoved me.

"Q. 'And fell when I stepped back into the ditch, and the car followed after me into the ditch and one of the handles at the front end of the car struck against my right foot and ankle, and I have been unable to put my foot to the floor yet'—that is what you said? A. I don't think I fell; I did n't fall."

"Q. You slipped on the ice? A. Yes, sir.

"Q. You knew ice was there? A. Yes, sir.

"Q. You fell? A. I slipped into the ditch—sat down on the opposite bank.

"Q. Slipping, you fell? A. I sat down.

"Q. By slipping the hand-car ran onto you? A. Yes, sir.

"Q. And if you had n't slipped it would n't have run on you, would it? A. I don't know whether it would or not.

"Q. Were you trying to hold it? A. I was trying to.

"Q. The only two men who had charge of it were you and Mr. Hill? A. Yes, sir.

"Q. Slipping, it come onto you? A. Yes, sir.

"Q. You knew it was icy and slippery? A. Yes sir; we knew it.

"Q. And slippery? A. Yes, sir.

"Q. Let 's read on: 'As I remember, Nelson and the other men had put the front car off and were on their way back toward Hill and I at the time I was injured'— that is right? A. Yes; they were coming. They got their car off.

"Q. And were coming toward you? A. Yes, sir.

"Q. At that time this train you had seen had n't gone by yet? A. Not exactly then.

"Q. Now listen further: 'Two men can put a car like this one off at that crossing without any difficulty, as it was not a heavy car, and there was not much of a load on it'? A. Two men can put that car off at that place.

"Q. You did get it off? A. Yes, sir.

"Q. By your slipping it ran onto you? A. By my being unable to hold my feet.

"Q. If you had n't slipped it would n't have run onto you? A. I don't know.

"Q. It was usual and customary for two men to take

Railroad Co. v. Justice.

the car off?   A.  It was customary for the men handling the car to put it off.

"Q.  You did get it off?   A.  Yes, sir.

"Q.  But for the fact it was slippery and you slipped it would n't have run onto you, would it?   A.  I don't know whether it would or not.

"Q.  If you had n't slipped you could have held onto the car?   A.  Yes, sir.

"Q.  And prevented it from running onto you?   A. I don't know.

"Q.  Did n't you say two men could take it off the track?   A.  I said they could get it off the track.

"Q.  You did?   A.  Yes; but we did n't manage it after we got it off.

"Q.  That was due to your slipping?   A.  Yes, sir.

"Q.  You had told Hill where to go?   A.  Yes, sir.

"Q.  You had told him to get on top?   A.  Yes, so we could raise it; he could do more there than he could at the other end.

"Q.  Listen further:  'The train was not so close but what we might have waited for Nelson and the other men to have assisted us, but there was no apparent reason for doing this, as we two could move it'—that is correct, ain't it?   A.  I don't remember them words; that is what I stated, if it is there.

"Q.  'I consider that my injury was purely the result of an accident, and that neither Nelson nor any of the men were in any way to blame for it'—is that what you said?   A.  I don't remember.

"Q.  Look at that and see if it is above your signature there.   A.  If it is there, I said it.

"Q.  That is correct, too. is n't it?   A.  I suppose it is as I understood it at that time.

"Q.  You understood the facts at that time just as well as you understand them now, did n't you?   A.  I don't look at it the same way exactly; I seen those places afterward and changed my mind.

"Q.  What places?  The snow and ice?   A.  No, sir; the shape of that ground.

"Q.  The ice was what caused you to slip?   A.  I say the slippery grade.

"Q.  It was the snow and ice on the ground that caused you to slip?   A.  There was a little snow and ice on the ground that morning and thawed a little.

"Q.  'There was no defect about the car or track that I know of, and I know of no reason for saying that the

company was to blame for my injury'—is that what you said? A. If it is there, I said it.

"Q. That is correct, too? A. As I understand it.

"Q. As you understand it now? A. I have changed my mind now; I have seen the track since.

"Q. What was the matter with the track? A. Nothing at all.

"Q. That part about the track is correct? A. The track was in good shape."

C. E. Hill, who was with plaintiff at the time of the injury, testified as follows:

"Ques. And in this way you swung the car around off the track? Ans. Yes, sir.

"Q. That is, the hand-car? A. Yes, sir.

"Q. You then stepped off the car? A. Yes, sir.

"Q. And took hold of the rear end? A. Yes, sir.

"Q. In rolling it off the car turned to one side? A. Kind of lurched and slipped to one side.

"Q. Do you know what made it turn to one side? A. Ice.

"Q. That covered the ground? A. Yes; and the ground was sloping.

"Q. And the ice on the ground caused the car to slip to one side? A. Yes, sir.

"Q. I will ask you if Justice controlled the car after it got off? A. He could n't.

"Q. Was that on account of the slippery ground? A. Yes, sir.

"Q. Did he slip back? A. He scooted along with the car.

"Q. After he slipped the car then shoved on, sliding down toward him? A. Yes, sir.

"Q. I will ask you if the car had rolled straight out from the track as you and Justice started it? A. We could have managed it.

"Q. But for the slipping of the car on the ice and Mr. Justice slipping on the ice you could have managed it? A. We was both slipping."

"Q. Two men ordinarily can take charge of a hand-car? A. Yes; I have taken it off myself.

"Q. Were you handling the car in the usual and ordinary and customary manner? A. Yes, sir.

"Q. You held onto the hand-car? A. As long as I could.

Railroad Co. v. Justice.

"Q.  Until it got down toward the ditch, and then it got away from you, too?  A.  Yes, sir.

"Q.  You slipped?  A.  Yes, sir.

"Q.  It got away from you on account of the ground being very slippery?  A.  Being very icy.

"Q.  It was very difficult to stand up?  A.  Yes, sir.

"Q.  Then, as I understand you, Mr. Justice was hurt after the hand-car had gotten off the track and he had struck in the ditch?  A.  Yes, sir.

"Q.  You had got the hand-car off the track and out of the road of the train?  A.  Yes, sir.

"Q.  Then Mr. Justice slipped and the car rolled onto him?  A.  Yes, sir.

"Q.  Mr. Berger asked you if it is n't a fact that the car slipped because it was slippery; was it because it was slippery, or was it because the car was so heavy you could n't manage it?  A.  The ground was icy; we had managed it many a time with as big a load; it was icy, and I suppose it was the load and ice together that caused it."

The allegations in the petition read:

"And plaintiff says that said injuries and damage were and are the direct and proximate result of the negligence and want of care of said defendant corporation, its servants, officers, agents and employees, in this, to wit, that said section foreman, George Nelson, knew, or by the exercise of ordinary care and caution would have known, that said passenger-train was due at said place before discovering the approach of said train as aforesaid, and in time to have avoided all danger, and to have safely removed said car from the track, said train being a regular Missouri, Kansas & Texas passenger-train running on said road and being due at the time, or soon after, said hand-car left Olathe; that said Nelson was negligent in not providing a sufficient number of men to safely remove said car from the track as aforesaid, said foreman well knowing that two men could not safely handle the said car in removing it from the track before the approach of said train; that said section foreman, George Nelson, was guilty of negligence and want of care in not giving timely warning of the approach of said passenger-train, and in not causing said cars to be safely removed from said railway track before the approach of said train, so as not

to endanger the lives of plaintiff and others on said hand-cars."

The petition, in describing the manner in which the injury was received, says:

"That at the crossing aforesaid the railroad bed was graded to an elevation of about five feet above the level of the surrounding ground, and said crossing was constructed with abrupt approaches, which were short and steep; that at said time the ground was frozen, but the surface had thawed, and was muddy and slippery; that plaintiff, in removing said car from the track, was on the lower side of the car away from the track, and on the approach to said crossing, and said Hill was on the upper side next to the track; that owing to the slippery condition of the ground and the steepness of said crossing, and the great weight of said car, plaintiff and said Hill were unable to hold said car, but it moved down said approach, pushing plaintiff before it, and the wheel of said hand-car ran on and against the foot, ankle and leg of plaintiff, cutting, crushing and wounding plaintiff's foot."

The defendant filed a general demurrer to the petition, which was overruled. A demurrer was also filed to the plaintiff's evidence, which was overruled. Whereupon defendant rested without producing any evidence. Instructions were requested which amounted to a direction to return a verdict in favor of the defendant, which were refused. A verdict was returned in favor of the plaintiff, and the defendant brings the case here for review.

*W. F. Evans, I. P. Dana,* and *A. L. Berger,* for the plaintiff in error.

*C. W. Gorsuch, J. P. Hindman,* and *J. G. Johnston,* for the defendant in error.

The opinion of the court was delivered by

GRAVES, J.: It is claimed by the defendant that the district court erred in refusing to sustain the demurrer to the petition, in overruling the demurrer to

plaintiff's evidence, and in refusing the instructions requested. These claims of error are founded upon the theory that neither the facts alleged in the petition nor those shown by the evidence are sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. They may, therefore, all be considered together.

The plaintiff was seriously injured. The amount of the verdict is reasonable, if the defendant is liable for anything. The railroad company denies being negligent in any particular, and insists that, even if it were negligent, as alleged in the petition, such negligence was too remote to create a liability for the injury received by the plaintiff.

Defendant further contends that the proximate cause of such injury was the slippery condition of the ground, for which it was not responsible. In the view we have taken, this is the paramount question in the case. It was said in the case of *Light Co. v. Koepp*, 64 Kan. 735:

"It is too well known to need illustration that negligence or other unintentional wrong will not furnish the foundation for a cause of action for damages unless it was the proximate cause of the injury sustained." (Page 736.)

In the case of *Railway Co. v. Columbia*, 65 Kan. 390, it was said:

"In cases of this character where two distinct, successive causes, unrelated in operation, to some extent contribute to an injury, it is settled that where there is an intervening and direct cause, a prior and remote cause can not be made the basis for recovery of damages, if such prior cause did no more than furnish the condition, or give rise to the occasion, by which the injury was made possible. It seems to be sound in principle and well settled by authority that where it is admitted or found that two distinct, successive causes, unrelated in their operation, conjoin to produce a given injury, one of them must be the proximate, and the other the remote, cause of the injury, and the court, in passing on the facts as found or admitted to exist, must

regard the proximate as the efficient and consequent cause, and disregard the remote cause." (Page 399.)

(See, also, *Gas Co. v. Dabney,* 79 Kan. 820.)

In the case of *Herr v. City of Lebanon, Appellant,* 149 Pa. St. 222, it was held:

"If two distinct causes are successive and unrelated in their operation, one of them must be the proximate and the other the remote cause. In such case, the law regards the proximate as the efficient and responsible cause, and disregards the remote." (Syllabus.)

In *Goodlander Mill Co. v. Standard Oil Co.,* 11 C. C. A. 253, 63 Fed. 400, it was said:

"The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." (Page 258.)

Applying these principles to the facts of this case it will not be difficult to determine what was the direct and proximate cause of plaintiff's injuries. The injury was received after the hand-car was safely off the track and the road clear for the passage of the train. After the wheels of the hand-car were off the rails it could not be managed by the plaintiff and his helper, because of the icy and slippery condition of the ground. Except for this condition the car could have been easily managed and no injury would have been sustained. This, in substance, is alleged in the petition, and is clearly shown by the evidence. If the necessity to derail the hand-car were a part of the business of the railroad company, and constituted a link in the chain of causation which led up to the accident, it was a remote and minor factor, and in no sense the direct and efficient cause which produced the injury. The defendant was not responsible for this condition of the ground, and had no control over it. Its duty to clear the track for the approaching train was fully and safely accomplished. These icy and slippery conditions were

Railroad Co. v. Justice.

wholly disconnected with, and had no relation to, the business of the railroad company or with the operation of its road.   They intervened after, and independent of, all the acts of the defendant mentioned in the petition.

It seems difficult, in view of these facts, to avoid the conclusion that the slippery condition of the ground was the proximate cause of the injury.   In this view the defendant would escape liability, perhaps, even if it were negligent in its prior handling of the hand-cars.   We are inclined to the conclusion, however, that no negligence in this respect has been shown.   Hand-cars and trains of all kinds must of necessity be operated upon the main line of every railroad at the same time, and negligence is not committed thereby if due care is taken to avoid collisions.   In this case the coming passenger-train was discovered in ample time to remove the hand-cars from the track, and this was done before the train reached the point where the derailment occurred.   Under ordinary circumstances the hand-car would have been under the control of the plaintiff, the injury would not have occurred, and the passing of the train would have been forgotten like any other incident of daily occurrence in the operation of a railroad.   The condition of the ground was as well known to the plaintiff and the other members of the crew as to the foreman.   It was equally open to the observation of all.   The plaintiff and Hill were not directed to remove the car alone; they expected assistance, but did not deem it necessary to wait, and voluntarily undertook to remove the car themselves.

In any view we do not think the plaintiff has either pleaded or proved a cause of action against the defendant.   The demurrer to the petition and to the evidence should both have been sustained.

The facts are not so that we can order a judgment for the defendant, and therefore the judgment of the district court is reversed with direction to proceed in accordance with the views herein expressed.