No. 19,262.

STEVE CLARK, *Appellee*, v. E. I. DU PONT DE NEMOURS POWDER COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Explosion of Solidified Glycerine—Personal Injuries—Proximate Cause—Intervening Causes.* It is gross negligence for an agent of a powder company, after shooting an oil well with solidified glycerine, to leave a quart of that explosive lying near the well; and the act of a workman, unskilled in the use of such substances, in removing the dangerous article and placing it in the stone fence of a near-by graveyard to prevent injury to himself and his fellow workmen, does not amount to an unrelated, intervening and efficient cause so as to excuse the powder company from its liability for damages to children who afterwards find the solidified glycerine and are injured by it.

2. SAME—*Duty and Liability of Owner of Dangerous Explosives.* The owner of so inherently dangerous a commodity as solidified glycerine is required to exert the highest degree of care to keep it in close custody to prevent its doing mischief, and that duty never ceases; and such owner is liable for all the natural and probable consequences which flow from any breach of that duty.

3. SAME—*Proximate Cause—Former Decision Adhered to.* The rules heretofore announced by this court for the determination of proximate cause adhered to.

Appeal from Chautauqua district court; ALLISON T. AYERS, judge. Opinion filed February 6, 1915. Affirmed.

*J. E. Brooks,* of Sedan, *A. H. Skidmore,* and *S. L. Walker,* both of Columbus, for the appellant.

*W. H. Sproul, J. A. Ferrell,* both of Sedan, *Charles W. Pennel,* and *Charles E. Webster,* both of Bartlesville, Okla., for the appellee.

The opinion of the court was delivered by

DAWSON, J.:    This is an appeal from an award of $1632.75 as damages for expenses and loss of services to the appellee on account of injuries received by his two minor sons through an explosion of solidified glycerine which was the property of the appellant.    The circumstances leading up to the unfortunate occurrence which gave rise to this lawsuit may be briefly stated: On November 25, 1909, one L. H. Small was engaged in drilling an oil well upon the farm of J. McDowell in Chautauqua county near the home of Steve Clark, the appellee.    The appellant, E. I. Dupont de Nemours Powder Company, is a New Jersey corporation, authorized to do business in Kansas and engaged in the business of manufacture and sale of exploding powders, nitroglycerine, solidified glycerine, and shooting of oil and gas wells with nitroglycerine, solidified glycerine and other powerful explosives of the nature of dynamite.    On said date the agent of the appellant, one Van Gray, came from Bartlesville, Okla., to shoot the well with solidified glycerine, and after this was done he carelessly left near the well about a quart of solidified glycerine.    One Joe McDowell, a son of the owner of the farm, and who was in the employ of the contractor who was boring the well, saw the explosive lying near, and, fearing that it would cause injury to himself or his fellow workmen who were still busy about the well, took charge of it and carried it home with him at the dinner hour.    His mother protested against keeping this dangerous article about the premises, and he immediately took the solidified glycerine to an abandoned graveyard on the McDowell

farm at some considerable distance from his home. The graveyard was quite small, containing only three or four bodies, and was surrounded by a stone fence. It had not been used as a burial ground for many years. Young McDowell climbed the stone fence and placed the dynamite in a crevice therein near the ground, and laid another stone in front of the recess in the fence, partially covering the explosive.

Neither the powder company nor its agent, Van Gray, ever gave the nitroglycerine any further concern, and it remained in the stone fence of the old graveyard for over two years, and until December 23, 1911, when it was found by the children of the appellee and two other boys who were passing that way. One of the sons of the appellee climbed over the stone fence and found the nitroglycerine and handed it to the boys on the outside. They did not know its nature, and after handling it to some extent they left it at the graveyard. That evening one of the boys, Fred Clark, spoke to his uncle about it and described it to him, and the uncle ventured the opinion that it was some sort of tallow and not dynamite. The next morning, Sunday, the two Clark boys and another boy were out hunting and returned to the graveyard and one of them picked up the article and hit it on a rock for the purpose of breaking off a piece to take home. This caused the explosion.

The father grounds his action upon actual damages on account of expenditures for medical and surgical services, medicine and drugs, for his own service and that of his wife and hired help in nursing and caring for his sons, and for the loss of the services of his sons for five months of each year until they are twenty-one years of age.

Appellant assigns error on various grounds, but they are all argued together and are conceded to be substantially the same or relating to the same principle

and may be considered as one question. What was the approximate cause of the injury to plaintiff's sons?

There can be no doubt of the negligence of the powder company and its agent, Van Gray, in carelessly leaving by the oil well an article so inherently dangerous as solidified glycerine. The highest degree of care is required of all responsible persons having ownership or control of dangerous explosives such as dynamite and firearms. The utmost prudence and caution should be exercised to see that so dangerous an instrumentality does not work mischief to persons or property. The degree of care must be commensurate with the dangerous character of the commodity, and the duty to exercise this highest degree of care in keeping close custody of an article like dynamite never ceases.

In *Mattson v. Minnesota & North Wisconsin Railroad Co.*, 95 Minn. 477, 104 N. W. 443, 111 Am. St. Rep. 483, it was said:

"The degree of care required of persons having the possession and control of dangerous explosives, such as dynamite, is of the highest. The utmost caution must be used to the end that harm may not come to others in coming in contact with them." (111 Am. St. Rep. 483, syl. ¶ 2.)

This principle is virtually admitted by appellant and its counsel, but in an exhaustive and scholarly brief they attempt to show that the negligence of the agent was not the proximate cause of the damage; and that there was an independent and efficient intervening agency growing out of the act of the young man McDowell, who to save himself and his fellow workmen from danger carried the dynamite first to his home, and then hid it in the abandoned graveyard; and that the acts of McDowell in removing the solidified glycerine from the place where he found it and in taking it home and hiding it in the old graveyard, where it was found by the children of appellee, innocent though young McDowell's acts might be, were the proximate cause of the damages which ensued.

The doctrine of remote and proximate cause is well established, and the difficulty in this case does not arise from a dispute as to the principle but as to its application. In 1 Cooley on Torts it is said:

"If an injury has resulted in consequence of a certain wrongful act or omission, but only through or by means of some intervening cause, from which last cause the injury followed as a direct and immediate consequence, the law will refer the damage to the last or proximate cause, and refuse to trace it to that which was more remote. The chief and sufficient reason for this rule is to be found in the impossibility of tracing consequences through successive steps to the remote cause, and the necessity of pausing in the investigation of the chain of events at the point beyond which experience and observation convince us we can not press our inquiries with safety. To the proximate cause we may usually trace consequences with some degree of assurance; but beyond that we enter a field of conjecture, where the uncertainty renders the attempt at exact conclusions futile." (3d ed., p. 99.)

Our attention is directed to many cases, including former decisions of this court, where the principle laid down by Judge Cooley is recognized. (*Railway Co. v. Columbia*, 65 Kan. 390, 69 Pac. 338; *Railway Co. v. Parry*, 67 Kan. 515, 73 Pac. 105; *Rodgers v. Railway Co.*, 75 Kan. 222, 88 Pac. 885; *Gas Co. v. Dabney*, 79 Kan. 820, 102 Pac. 488; *Railroad Co. v. Justice*, 80 Kan. 10, 101 Pac. 469; *Barnett v. Cement Co.*, 91 Kan. 719, 139 Pac. 484.)

Running through all the precedents in analogous cases the test appears to be: Is the injury or damage the natural and probable consequence of the original negligence? The mere intrusion of an intervening agency does not always excuse the original wrongdoer. On this subject the supreme court of Massachusetts has spoken with such accuracy and precision that its ideas are settled law. Thus in *Stone v. Boston & Albany Railroad*, 171 Mass. 536, 51 N. E. 1, it was said:

"It can not, however, be considered that in all cases the intervention even of a responsible and intelligent

human being will absolutely exonerate a preceding wrongdoer. Many instances to the contrary have occurred, and these are usually cases where it has been found that it was the duty of the original wrongdoer to anticipate and provide against such intervention, because such intervention was a thing likely to happen in the ordinary course of events. Such was the case of *Lane v. Atlantic Works,* 111 Mass. 136, where it was found by the jury that the meddling of young boys with a loaded truck left in a public street was an act which the defendants ought to have apprehended and provided against, and the verdict for the plaintiff was allowed to stand. In the carefully expressed opinion by Mr. Justice Colt the court say: 'In actions of this description, the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged; but it will not be considered too remote if, according to the usual experience of mankind, the result ought to have been apprehended. The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise.' According to this statement of the law, the questions in the present case are, Was the starting of the fire by Casserly the natural and probable consequence of the defendant's negligent act in leaving the oil upon the platform? According to the usual experience of mankind, ought this result to have been apprehended? The question is not whether it was a possible consequence, but whether it was probable, that is, likely to occur, according to the usual experience of mankind. That this is the true test of responsibility applicable to a case like this has been held in very many cases, according to which a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him

18—94 KAN.

bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable. A high degree of caution might, and perhaps would, guard against injurious consequences which are merely possible; but it is not negligence, in a legal sense, to omit to do so.

"There may not always have been entire consistency in the application of this doctrine; but, in addition to cases of boys meddling with things left in a public street, courts have also held it competent for a jury to find that the injury was probable, although brought about by a new agency, when heavy articles left near an opening in the floor of an unfinished building, or in the deck of a vessel, were accidentally jostled so that they fell upon persons below; *McCauley v. Norcross,* 155 Mass. 584; *The Joseph B. Thomas,* 81 Fed. Rep. 578; when sheep, allowed to escape from a pasture and stray away in a region frequented by bears, were killed by the bears; *Gilman v. Noyes,* 57 N. H. 627; and when a candle or match was lighted by a person in search of a gas leak, with a view to stop the escape of gas; *Koelsch v. Philadelphia Co.,* 152 Pa. St. 355; and in other cases not necessary to be specially referred to. In all of these cases, the real ground of decision has been that the result was or might be found to be probable, according to common experience.

"Without dwelling upon other authorities in detail, we will mention some of those in which substantially this view of the law has been stated. (*Davidson v. Nichols,* 11 Allen, 514; *McDonald v. Snelling,* 14 Allen, 290; *Tutein v. Hurley,* 98 Mass. 211; *Hoadley v. Northern Transportation Co.,* 115 Mass. 304; *Hill v. Winsor,* 118 Mass. 251; *Derry v. Flitner,* 118 Mass. 131; *Freeman v. Mercantile Accident Association,* 156 Mass. 351; *Spade v. Lynn & Boston Railroad,* 168 Mass. 285, and cases there cited; *Cosulich v. Standard Oil Co.,* 122 N. Y. 118; *Rhodes v. Dunbar,* 57 Pa. St. 274; *Hoag v. Lake Shore & Michigan Southern Railroad,* 85 Pa. St. 293; *Behling v. Southwest Penn. Pipe Lines,* 160 Pa. St. 359; *Goodlander Mill Co. v. Standard Oil Co.,* 63 Fed. 400, 405, 406; *Haile v. Texas & Pacific Railway,* 60 Fed. 557; *Clark v. Chambers,* 3 Q. B. D. 327; Whart. Negl., 2d ed., §§ 74, 76, 78, 138-145, 155, 955; Cooley, Torts, 69, 70; Add. Torts, 40; Pollock, Torts, 388; Mayne, Damages, 39, 47, 48.)" (p. 540.)

Our attention is directed by counsel for appellant to many cases where on account of an independent intervening agency the original wrongdoer was excused. (*Goodlander Mill Co. v. Standard Oil Co.,* 63 Fed. 400; *Carter v. Towne,* 103 Mass. 507; *Nickey v. Steuder,* 164 Ind. 189, 73 N. E. 117; *Cole v. German Savings and Loan Soc.,* 124 Fed. 113; *Burt v. Advertiser Newspaper Co.,* 154 Mass. 238, 28 N. E. 1; *Jennings v. Davis,* 187 Fed. 703, 713; *Finkbeiner, Appellant, v. Solomon,* 225 Pa. St. 333, 74 Atl. 170; *Harriman v. Railway Company,* 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507; *Harton v. Telephone Co.,* 146 N. Car. 429, 59 S. E. 1022, 14 Ann. Cas. 390; *Pollard v. Oklahoma City Ry. Co.,* 36 Okla. 96, 128 Pac. 300.)

On the other hand, counsel for appellee cite and quote from an impressive list of authorities beginning with the well-known Squib case, decided in 1770, and closing with the last expression of this court on analogous cases where the original cause was held to be the principal and proximate cause and where the intermediate incidents did not avoid the consequences· arising from the acts or delicts of the original wrongdoer.

We do not think the facts in the Squib case (*Scott v. Shepherd,* 2 W. Bl. 892) are quite the same as here. In that case the burning squib was thrown by the original wrongdoer on the market stand of Yates, who instinctively and immediately picked it up and threw it on the stand of Willis, and Willis immediately threw it upon the stand of Ryal, and Ryal immediately and in self-defense threw it away from him so that it struck the eye of the plaintiff, Scott, and put out his eye. In that case the intervening agents had no time for reflection. But part of the opinion in that case is pertinent here:

"That the natural and probable consequence of the act done by the defendant was injury to somebody, and therefore the act was illegal at common law.  .  .  . Being therefore unlawful, the defendant was liable to answer for the consequences, be the injury mediate

or immediate. . . . The defendant . . . is the person, who, in the present case, gave the mischievous faculty to the squib. That mischievous faculty remained in it till the explosion. No new power of doing mischief was communicated to it by Willis, or Ryal. It is like the case of a mad ox turned loose in a crowd. The person who turns him loose is answerable in trespass for whatever mischief he may do. The intermediate acts of Willis and Ryal will not purge the original tort in the defendant. But he· who does the first wrong is answerable for all the consequential damages." (p. 893.)

Here we reach the crux of the matter. No new power of doing mischief was communicated to the solidified glycerine by the acts of young McDowell. The power of doing mischief was inherent in the glycerine all the time. That some terrible accident was likely to happen in letting it out of the close custody of some one skilled in its use was not only natural and probable but almost inevitable. McDowell had no skill or experience in handling the dangerous article. He did the best he could to prevent the damage impending on account of Van Gray's negligence. That he attempted to prevent its doing damage, but failed on account of lack of sufficient knowledge to dispose of it effectively, does not amount to an unrelated and efficient agency to shift the proximate cause from the delict of the powder company to a new proximate cause of his own making.

It may be said, however, that this is mere argument. If so, then the question clearly resolves itself into one of fact for the jury; and this is in harmony with the authorities.

In *Railway Co. v. Parry*, 67 Kan. 515, 73 Pac. 105, it was said:

"Negligence, to be the proximate cause of an injury, must be such that a person of ordinary caution and prudence would have foreseen that some injury would likely result therefrom, not that the specific injury would result. The question whether negligence is the

proximate cause of an injury is ordinarily one of fact for the jury." (Syl. ¶ 2.)

In that case a passenger on the train became seriously ill, and the conductor called the depot-master at Newton, who, with the assistance of the porter, removed the sick man from the train and the conductor told the depot-master to care for him. About four hours afterward the sick man was run over and killed about five miles from Newton. The railway company insisted that even if there was culpable negligence it was not the proximate cause of the injury. In its opinion the court said:

"At most, the question whether the negligence of the depot-master was the proximate cause is one upon which the minds of different parties might reasonably disagree; and such being the case, and the whole matter having been submitted to the jury under proper instructions, and they having found that it was, we may not disregard these findings of fact. We are of the opinion that, upon both questions, there was sufficient evidence to go to the jury and to sustain the general findings in favor of the defendant in error." (p. 520.)

Another good case holding that the determination of proximate cause is a question for the jury, and which also contains a strong and logical analogy to the case at bar, is *Filson v. Express Co.*, 84 Kan. 614, 114 Pac. 863, where the syllabus reads:

"The owner of an express package failed to call at the express office for it and the agent of the express company placed it in the company's office, which was located in a railroad depot consisting of a frame building, the doors and windows of which were locked. The depot had been used for years for depositing freight and express matter. It was entered during the night by a burglar breaking the glass of one of the windows, and the package with its contents was stolen. The package was a canvas-covered telescope containing moving-picture films. It weighed fifty-five pounds and was valued at $600, and the value was marked on the outside of the package in plain figures. In an action to recover against the company for its loss it was con-

ceded that the liability of the company was that of a warehouseman. *Held,* that it was a question for the jury to determine from all the evidence and circumstances whether the express company failed to exercise ordinary care, and whether such failure was the proximate cause of the loss." (Syl. ¶ 2.)

In the opinion, Mr. Justice Porter said:

"Whether persons in the exercise of ordinary care would have left it there over night, in a building which could be easily entered by burglars and which the evidence shows had been burglarized at least once before, to the knowledge of the express agent, was, under all the circumstances, a question for the jury.

"It was also for the jury to determine whether the negligence of the company was the proximate cause of the loss. It was the proximate cause if the loss by burglary was the natural and probable consequence of the failure of the company to exercise ordinary care— that is, if it might have been foreseen by ordinary forecast." (p. 618.)

In the still later case (*Barnett v. Cement Co.,* 91 Kan. 719, 139 Pac. 484), the same proposition was adhered to, although two dissenting justices urged that the determination of the jury as to which was the remote and which the proximate cause is not necessarily conclusive. If that be a qualification of the general rule, it takes nothing from the strength of appellee's position in this case, for the trial court was satisfied that the negligence of the appellant was the proximate cause of the injury, and so are we.

Among other cases examined in arriving at these conclusions, the following may be noted: *Eberhardt v. Telephone Co.,* 91 Kan. 763, 139 Pac. 416; *Broseghini v. Coal Co.,* 92 Kan. 113, 139 Pac. 1025; *Kleebauer v. Western Fuse etc. Co.,* 138 Cal. 497, 69 Pac. 246; *Dist. of Columbia v. Dempsey,* 13 App. Cas. (D. C.) 533; *Page v. Bucksport,* 64 Maine, 51, 18 Am. Rep. 239; *Wellington v. Downer Kerosene Oil Company,* 104 Mass. 64; *Lane v. Atlantic Works,* 111 Mass. 136; *Filer v. Smith,* 96 Mich. 347, 55 N. W. 1002; *Skinn v. Reutter,* 135 Mich. 57, 97 N. W. 152; *Iamurri v. Sagi-*

naw City Gas Co., 148 Mich. 27, 111 N. W. 884; Vills v.
City of Cloquet, 119 Minn. 277, 138 N. W. 33; Quigley
v. Canal Co., 142 Pa. St. 388, 21 Atl. 827, 24 Am. St.
Rep. 504; Lowery v. Manhattan Railway Co., 99 N. Y.
158, 1 N. E. 608; Williams v. Koehler & Co., 41 App.
Div. 426, 58 N. Y. Supp. 863; Olson v. Home Invest-
ment Co., 58 Wash. 151, 108 Pac. 140; Illidge v. Good-
win, 5 C. & P. 190; Dixon v. Bell, 5 M. & S. 198; Lynch
v. Nurdin, 1 Q. B. 29.

The other errors assigned are all incidental to the
main question. The fact that the boys were hunting
on Sunday, or that they might be trespassers, does not
affect the case. The jury found that they were not
trespassing; but the damage did not arise from the
trespass nor the Sabbath breaking, nor did they con-
tribute in the slightest degree to the accident and its
consequences.

No substantial error appearing in the record, the
judgment is affirmed.