## ATEX CONST. CO. v. FARROW et ux.
### No. 7948.

Court of Civil Appeals of Texas. Austin.
April 11, 1934.

Rehearing Denied May 9, 1934.

Roy Starnes, of Gladewater, and Collins, Jackson & Snodgrass, of San Angelo, for appellants.

Upton & Upton, G. O'Neal Dendy, and W. H. Lipscomb, all of San Angelo, for appellees.

BLAIR, Justice.

Appellees, E. H. Farrow and his wife, Ora Farrow, sued appellants to recover damages for the death of their minor son, alleging that in August, 1927, the appellants, operating under the firm or partnership name of Atex Construction Company, were engaged in constructing a gas line, which work required blasting with dynamite, and for which purposes the appellants kept on hand large quantities of dynamite caps to be used in the charge and explosion of dynamite for blasting rock out of the ditch in which the gas pipe was placed; that in the course of such work the appellants camped in the O. D. Richardson pasture near the residence of appellees, and at which camp site they kept large quantities of dynamite caps to be used as aforementioned; that, when the camp site was abandoned, the appellants, their agents, servants, and employees, the names of whom appellees did not know, negligently left and allowed to remain scattered upon the ground at and about the camp site large quantities of dynamite caps, which were unprotected, unguarded, and exposed, and which were allowed to remain in an open pasture in a densely settled community; and that on August 12, 1930, while playing with other children, their minor son, E. H. Farrow, Jr., found a large quantity of said dynamite caps, and gathered a large number of such caps in his hands, which resulted in their explosion and caused his death.

Appellants answered by a general demurrer, special exceptions challenging the sufficiency of the pleadings to identify the agents and employees claimed to have been negligent, and general and special denials.

In answer to special issues submitted, the jury found: (1) That the agents, servants, and employees of appellants occupied the campsite in question; (2) that they had dynamite caps in their possession at the campsite; (3) that the possession of the dynamite caps was in the course of their employment; (4) that they left dynamite caps at or about

or around the camp site; (5) that the leaving of said caps at the camp site constituted negligence; (6) that such negligence was the proximate cause of the injuries which resulted in the death of the minor child; and that the damages suffered by appellees aggregated $11,000. Judgment was accordingly rendered for appellees; hence this appeal.

■ The evidence showed that during August, 1927, the appellants, operating under the firm or partnership name of Atex Construction Company, were engaged in constructing a gas line near the city of San Angelo. In doing the work, appellants used five separate gangs or crews. The first was known as Skagg' Bros.' crew, who were independent contractors, and who contracted with the Atex Construction Company to excavate "a suitable ditch 28 inches in depth, through dirt and caliche * * * capable of being cut by a No. 4 Buckeye Trenching Machine." Where rock was encountered and the ditching machine would not cut it, a followup or special hand crew was used. This second crew was composed of several men, and was equipped with an air compressor for drilling rock and with dynamite and dynamite caps for blasting the rock out of the ditch in which the pipe was to be placed. This dynamite crew was in charge of E. L. King, as foreman, and "it was the Atex Construction Company's gang." The remaining crews were engaged in lining-up, welding, tying-in, and lowering the pipe in the ditch after its completion. In the course of constructing the gas line, appellants established a camp site for three or four days in August, 1927, in the pasture of O. D. Richardson, near the San Angelo-Bronte public road, for the purpose of keeping their tools, machinery, wagons and teams, and supplies at night; and the only person left at the camp site was a watchman who guarded the property. During the time the camp was so located, appellants' dynamite crew did some blasting at Red creek, about one mile from the camp, working some three or four days. Appellants' agent or employee Cotten delivered a supply of dynamite and dynamite caps to E. L. King at San Angelo, which were brought on an Atex Construction Company truck to Red creek, where the blasting was done. It was not shown where the dynamite caps were kept at night. One of the dynamite crew testified that he left his tools at the camp in Richardson pasture at night. About fifteen minutes after the Richardson pasture camp site was abandoned by appellants, and while the outfit was still in sight, Mr. and

Mrs. Richardson passed by it on their way to town, and saw several boxes of dynamite caps sitting on the ground, and Mrs. Richardson saw them when they returned in the afternoon, but Mr. Richardson did not see them again. The camp site was about 250 yards from the home of appellees, and on August 12, 1930, while playing with other children, their minor son, E. H. Farrow, Jr., found a large quantity of dynamite caps about 20 feet north of the camp site, and gathered a large number of such caps in his hands, which resulted in their explosion and caused his death. The children took the dynamite caps to play with because of their similarity to ordinary rifle shells. After the death of the boy at the old camp site, several dynamite caps were found scattered over the ground at and near the old camp site. Neither Cotten who delivered the dynamite caps to King at San Angelo, nor King, the foreman of the dynamite crew, nor the watchman at the camp site where the dynamite caps were found, was produced as witness by appellants; nor was their absence accounted for by the appellants. The evidence was undisputed that the dynamite caps were dangerous and could be easily exploded by a jar, which is also a matter of common knowledge. Appellants' witnesses testified that they did not haul them on wagons or any equipment used by the last three mentioned crews, and that it would have been dangerous to have hauled them on any of the wagons or equipment which left the camp site shortly before the dynamite caps were seen there by Mr. and Mrs. Richardson. No other person or persons had used dynamite caps at or near the camp site in question.

■■ Appellants contend that, while this proof may have shown the presence of some of their employees and equipment at the camp site and the discovery after its abandonment of the dynamite caps, still this proof was not sufficient to fix their liability for the death of the boy who picked up the dynamite caps at the abandoned camp site and was killed by their explosion in his hands, in absence of further proof showing that these same employees were employed to do some character of work which involved the possession or use of the dynamite caps. The rule of law stated has been adopted in Texas and other jurisdictions; but, contrary to the contention of appellants, the evidence showed that their employees charged with safely keeping these dangerous instrumentalities in their custody or possession negligently failed to do so.

■ The authorities are legion holding that a master who uses dangerous instrumentalities, such as dynamite caps, in the prosecution of his business is charged with the highest degree of care in the custody and use thereof, and, when he intrusts them to a servant or employee, the proper custody and use thereof become a part of such servant's or employee's employment, and he must use the same degree of care and attention as the law requires of the master; and, when such dangerous instrumentalities are negligently permitted to escape the custody or possession of the servant or employee and injury is done to a third person, the master is liable for the consequences of such injury. The master is also liable for the passive negligence of his servant or employee in failing to safely keep such dangerous instrumentalities committed to his care in the discharge of the master's business and in failing to take proper precautions for the protection of the public. Branch v. I. & G. N. Ry. Co., 92 Tex. 288, 47 S. W. 974, 71 Am. St. Rep. 844; City of Lubbock v. Bagwell (Tex. Civ. App.) 206 S. W. 371, writ of error refused; Moore v. Jefferson City Light Co., 163 Mo. App. 266, 146 S. W. 825; Clark v. Du Pont de Nemours Powder Co., 94 Kan. 268, 146 P. 320, L. R. A. 1915E, 479, Ann. Cas. 1917B, 340; Pittsburgh, etc., Ry. Co. v. Shields, 47 Ohio St. 387, 24 N. E. 658, 8 L. R. A. 464, 21 Am. St. Rep. 840; Little v. McCord Co. (Tex. Civ. App.) 151 S. W. 835; 29 Tex. Jur. 420, § 249; 39 C. J. 1288, § (1483) (b). And in 19 Tex. Jur. 461, § 7, the rule is stated, that "persons having explosives in their possession or using them in their business must exercise the highest care and utmost caution to see that no harm or injury results to others. It is especially incumbent on the possessor of explosives not to place them in such a position as to attract the attention of and be reached by an irresponsible child, and, under the doctrine of attractive nuisance, if he does so place them he is in law deemed to have anticipated danger or probable injury to some child. It is not, of course, necessary that the precise act causing the explosion should have been anticipated, nor the time in which it might occur."

■ The work of appellants in constructing the gas line required the use of dynamite caps, which were dangerous instrumentalities. A special crew of men was intrusted with the possession and use of the caps. These employees of appellants took the caps to and did blasting with them, in the immediate vicinity of the camp site, which from the evidence the jury could have reasonably inferred was used by all employees for storing their tools and equipment at night, including the dynamite caps. The dynamite caps were negligently left by these employees of appellants at the abandoned camp site, which was in a densely settled rural community, where appellees' minor son, while playing with other children, found them and gathered them in his hands and was killed by their explosion. Appellants did not produce either of the employees charged with the custody or possession and use of the dynamite caps. Nor did they produce the watchman who guarded the property at the camp site where the dynamite caps were seen by the Richardsons within a few minutes after it had been abandoned and while the camping outfit was still in sight, and later found by the deceased boy and others in the ground and scattered about upon the ground at and around the camp site. This evidence was sufficient to show that appellants, their agents, servants, and employees, negligently left the dynamite caps at the abandoned camp site where the child found them and picked them up and was killed by their explosion in his hands. Especially is this true since appellants failed to produce or account for the absence of their employees charged with the care, custody, or possession of the dynamite caps, and from which failure the jury had the right to infer that the said employees' evidence would have been against appellants under the rule that "The failure of a party to produce evidence which is within his knowledge, which he has the power to produce, and which he would naturally produce if it were favorable to him, gives rise to an inference that if such evidence were produced it would be unfavorable to him." 22 C. J. 111. Or "such an unfavorable presumption may arise, for example, from the failure of a party to produce testimony peculiarly within his knowledge, or his failure to call witnesses who have knowledge of the facts, especially his own agents or servants." 17 Tex. Jur. 303, 304, § 86; Taylor & Co. v. Nehi Bottling Co. (Tex. Civ. App.) 30 S.W.(2d) 494; Cox v. Bankers' Guaranty Life Co. (Tex. Civ. App.) 45 S.W. (2d) 390; Compton, Ault & Co. v. Marshall, 88 Tex. 50, 27 S. W. 121, 28 S. W. 518, 29 S. W. 1059, 1060, where it is held that, while the rule quoted "is not allowed to supply the want of necessary proof * * * against a defendant; * * * but, when such proof has been given, it is a rule to be applied in considering the weight of the evidence against him, whether direct or presumptive, when it is unopposed, unrebutted, or not weakened by contrary evidence which it would be in

the defendant's power to produce if the fact directly or presumptively proved were not true."

The aforementioned evidence also sufficiently identifies the men who were charged with the custody and use of the dynamite caps as being the agents, servants, or employees of appellants, and we do not sustain appellants' second contention raising the question. Appellees alleged that they did not know the names of appellants' agents, servants, and employees charged with the custody and use of the dynamite. The proof offered by appellants' witnesses itself showed who the employees charged with the custody and use of the dynamite caps were, and that they were the employees of appellants engaged in the construction of the gas line, or their watchman having possession of the dynamite caps along with the other property at the camp site. The facts with respect to which employees had charge of the caps and which of them negligently left them on the ground at the old camp site were peculiarly within the knowledge of appellants. No attempt was made to produce these employees as witnesses nor to account for their absence; and, in leaving the caps at the old camp site, the employees did not exercise that high degree of care in the protection of the public against the danger incident to dynamite caps, a dangerous instrumentality, which the law required of them.

The jury found that appellants' agents, servants, and employees negligently left the dynamite caps at the abandoned camp site, and that such negligence was the proximate cause of the death of the child. Appellants contend that the court erred in not sustaining their motion for judgment non obstante veredicto for two reasons: (1) Because no reasonable person could have foreseen that the dynamite caps left in the original boxes at the camp site would be subsequently removed, buried in the ground near the post, and dug up by boys at play three years later; and (2) because the lone circumstance that the dynamite caps had been removed from the boxes and buried in the ground was enough to disclose the intervention of an independent and intelligent agency as the real cause of the injury resulting in the boy's death. These contentions are not sustained.

The sufficiency of the evidence to support primary negligence and the rule requiring the exercise of the greatest degree of care in the custody and use of the dynamite caps have been discussed. Dynamite caps are dangerous instrumentalities, and no reasonably prudent person would leave several boxes of them in an open pasture in a densely settled rural community. The evidence showed that it would have been dangerous to have hauled the caps on any wagon or truck leaving the abandoned camp site, and from these facts and circumstances the jury could have reasonably inferred that appellants' employees purposely left them out of regard for their safety, or that they carelessly left them through oversight. In any event a person of ordinary prudence charged with the duty of exercising the highest degree of care in the custody of the dynamite caps should have foreseen the probability of the caps being scattered by stock or the wind, and that children playing might pick them up as playthings and be injured or killed by their explosion. But appellants insist that some other prudent person came along and saw the dynamite caps, and, knowing of their danger, buried them a few feet away by a post, where the deceased boy dug them up and was killed when they exploded in his hands, which broke the causal connection between the negligent leaving of the caps and the finding of them by the boy at play. Appellants argue in this connection that "evidently the man who buried the caps thought that he was acting for the protection of the public, and that he was really acting in line with the dictates of common prudence." If so, then his efforts did not increase the danger, but rather reduced it, and in any event his effort did not constitute an intervention of an independent agency as the real cause of the death of the boy; but the original negligence in leaving the dynamite caps at the abandoned camp site still remained the direct cause of the injury.

The only testimony, however, with respect to the dynamite caps being buried was that of the Olsen boy, the playmate of the deceased, who merely stated "that he (deceased) dug them out of the ground there, by a post." Whether the caps had been buried there by some one, or whether the wind blew a box of them against the post and the rain for three years covered them with dirt, is more or less of a surmise. But the facts remain that the caps were found by the deceased and others scattered on the ground at and around the old camp site where the Richardsons saw them on the day the camp site was abandoned by appellants' employees, and there was no such break in the causal connection between the negligence of the employees of appellants in leaving the caps in the open pasture and the death of the boy who found the caps at or near the camp site, so as to relieve

appellants from liability for the injury which resulted in the boy's death, caused by the explosion of the caps which he had gathered in his hand as playthings.

In the case of Seale v. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602, it was held that, "if the intervening cause and its probable or reasonable consequences be such as could reasonably have been anticipated by the original wrongdoer, the current of authority seems to be that the connection is not broken."

In the case of Vills v. Cloquet, 119 Minn. 277, 138 N. W. 33, it was held that the act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. Clark v. E. I. Du Pont de Nemours Powder Co., 94 Kan. 268, 146 P. 320, L. R. A. 1915E, 479, Ann. Cas. 1917B, 340.

In the case of the City of Lubbock v. Bagwell (Tex. Civ. App.) 206 S. W. 371, 373 (writ of error refused), where employees of the city, after the day's work, put a box of dynamite caps on the plate of a shed belonging to the father of the injured boy, and while playing the boy's attention was attracted to the box, and he took two of the caps, thinking they were cartridge shells, and on the following day tried to solder them together, causing them to explode and injure his hand, it was held that, "having placed this dangerous explosive in such position as to be reached by an irresponsible child, and so as to attract his attention, he must have anticipated danger or probable injury to the boy or to some other child.

"It was not necessary for him to have anticipated the precise act that exploded the cap or the time in which it ought to occur. Time was of no importance or part of the proximate cause, further than it might be considered by the jury in connection with the other circumstances of the case in determining the proximate cause."

In the case of Clark v. DuPont de Nemours Powder Co., 94 Kan. 268, 146 P. 320, L. R. A. 1915E, 479, Ann. Cas. 1917B, 340, a case analogous on both the facts and principle of law applicable to the instant case, the syllabi 1 and 2 read:

"It is gross negligence for an agent of a powder company, after shooting an oil well with solidified glycerine, to leave a quart of that explosive lying near the well; and the act of a workman, unskilled in the use of such substances, in removing the dangerous article and placing it in the stone fence of a nearby graveyard to prevent injury to himself and his fellow workmen, does not amount to an unrelated, intervening, and efficient cause so as to excuse the powder company from its liability for damages to children who afterwards find the solidified glycerine and are injured by it.

"The owner of so inherently dangerous a commodity as solidified glycerine is required to exert the highest degree of care to keep it in close custody to prevent its doing mischief, and that duty never ceases; and such owner is liable for all the natural and probable consequences which flow from any breach of that duty."

■ Appellants further contend that the definition of the term "proximate cause" given in connection with the special issue submitted to the jury was incorrect, because it failed to take notice of or to define a new and independent cause, and failed to submit for the determination of the jury whether such intervening or new and independent cause might not have been the proximate cause of the death of the child. Appellants say that the lone circumstance that the dynamite caps had been removed from the boxes and buried in the ground was enough to disclose the intervention of an independent and intelligent agency as the real cause of the injury which resulted in the death of the child. Our above holding is to the effect that as a matter of law the evidence did not raise the issue of an intervening or independent agency or cause which resulted in the death of the child. The suggestion that some third person found and buried the dynamite caps at the old camp site is a mere surmise; but, even so, that fact would not raise the issue of intervening or independent cause, or break the causal connection between the negligent act of leaving the dynamite caps at the old camp site and the death of the child; and it was therefore not necessary to make any reference to a possible new and independent cause in the definition of proximate cause. Texas-Louisiana Power Co. v. Bihl (Tex. Civ. App.) 43 S.W.(2d) 294.

■ Appellants further contend that the court erred in refusing to define the term "course of employment" as used in connection with special issue No. 3, because it was an issuable fact as to whether the servant or employee charged with negligently leaving the dynamite caps at the old camp site was acting in the course of his employment. The term or phrase, "course of employment," is not such a legal or technical term as neces-

sitates definition or explanation. Guitar v. Wheeler (Tex. Civ. App.) 36ˑ S.W.(2d) 325; Employers' Casualty Co. v. Scheffler (Tex. Civ. App.) 20 S.W.(2d) 833.

We have carefully examined appellants' several remaining propositions, and find that none of them presents error requiring a reversal of the judgment, and it will be affirmed.

Affirmed.