No. 20,899.

HENRY D. FRASER, *Appellee*, v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

NEGLIGENCE—*Freight House Watchman — Shot by Intruder — Entrance Through Unbolted Door—Proximate and Remote Causes.* The defendant, an interstate carrier, maintains a large freight house having many doors. It was known there were persons about the freight house at different times of the night watching for an opportunity to steal property in the defendant's care. At the close of business each day it was the duty of an employee known as the doorman to close all doors and bolt them. The plaintiff was night watchman of the freight house, and his duties were to look after and protect the property in the defendant's custody. The first duty of the watchman, on coming into the building in the evening, was to see that all doors were closed and bolted, but this duty had not been communicated to the plaintiff. At 1:05 a. m., while going his rounds, the plaintiff discovered that one of the doors was open. Suspecting the presence of an intruder, he commenced to draw his revolver, when he was shot in the arm by which he carried his lantern, by a man who escaped through the open door. The plaintiff had passed by the door hourly since 7:05 of the evening before, and the door had been closed. Assuming the doorman failed to bolt the door, it is held the omission merely created a condition which made entrance into the building less difficult, and that the cause of

the plaintiff's injury was the independent, unrelated criminal act of the intruder, who used the door to gain admission to the building.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed June 9, 1917. Reversed.

*Paul E. Walker, Luther Burns,* both of Topeka, and *O. L. Miller,* of Kansas City, for the appellant.

*William B. Sutton,* and *William B. Sutton, jr.,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injuries sustained by the plaintiff, who was an employee of the defendant. The plaintiff recovered, and the defendant appeals.

The defendant maintains two freight houses in Kansas City, Mo., which extend north and south and are connected by a dock or platform. At the close of business each day a doorman sees to it that all doors are closed and bolted. About six o'clock in the evening a watchman comes in and remains until six o'clock the next morning. The watchman is the only man in charge of the company's property at night, and his duties are to protect and look after such property in all respects— the lights, fire, water, theft, and if doors be not secured, to secure them. Two registry boxes are installed in each building. In case of fire, the watchman breaks the box, pulls down a lever, and so gives an alarm. Besides this, the watchman is required to visit each box at stated intervals throughout the night, and by means of the bell indicate to the Western Union telegraph office in the Stock Exchange building, a block and a half from the freight houses, that he is awake and on duty. Frank Holland was the watchman for both buildings. The work was too heavy for one man, and the plaintiff took Holland's place as watchman of the north building. The plaintiff had been fireman of the heating plant which heated the freight house office. It required but a small amount of work to attend the heating plant, and he continued to do so after he assumed the duties of watchman. One night, as the plaintiff was going his rounds, he saw an open door on the west side and

toward the north end of the building. He had passed by the door hourly from 7:05 p. m. to 12:05 a. m. and the door had been closed, but as he came to it at 1:05 a. m. it was open. He carried a lantern at his side in his left hand and a revolver in a holster under his left arm. Upon seeing the open door he reached for his revolver with his right hand, and was immediately shot in the left arm by a man who escaped through the open door.

The plaintiff's petition does not contain the word "watchman." He framed his petition and he framed his testimony to make it appear that aside from his duties as fireman his duties consisted in ringing those two bells, installed for the purpose of compelling him to make an hourly record of the fact that he was awake and about his business. He said the registry boxes were for protection against fire, and had to be rung every hour. He had no orders covering anything except his duties as fireman and turning in those registry boxes. He said Holland was a watchman, and had pulled the bells as a part of his duties as watchman. Holland was relieved of all duty in the north building, but the plaintiff said one of Holland's duties was taken away and given to him, and that was to pull the bells, and he pulled them as fire protection. The plaintiff's superior officer left the order for him to ring those bells. He had no orders about doors, except the one through which he entered the building. That one he was required to shut, so people could not steal or burn or do any damage, and he locked it behind him to keep anybody from coming in after him. But there his duties in respect to doors ended. True, he said, "while working there I went round some with Holland, and found doors open, and we closed them," but when he took Holland's place, and there was no other employee except himself in the building, sometimes he glanced around when going to ring his bells, and sometimes he did not. When not ringing the bells he stayed in the office.

The supposed foundation for the defendant's legal liability in damages is this: The plaintiff was obliged to pass by the door through which the intruder entered every hour of the night in going from the office to the places where he worked the bell-ringing charm against fire. The door was left unlocked, and no guard was set to prevent desperadoes from

making a breach through this weak place in the fortifications behind which the plaintiff rung his bells. These culpable omissions exposed the plaintiff, who was entirely without fault, to great bodily harm, and even to death, and did in fact, through a series of events linked together in natural sequence, proximately cause the plaintiff to be shot.

Testimony which the plaintiff himself produced, and the testimony of witnesses produced by the defendant whom the plaintiff did not undertake to contradict, cut the underpinning from the fabrication that bell ringing was an independent employment, and not a means of making hourly reports, and established the fact that the plaintiff was watchman of the north building in place of Holland, and succeeded to Holland's duties there. There are doors and doors of the north freight house, which is 600 feet long and 45 feet wide. A rolling door at the south end opens on the dock between the two buildings, and has bolts in the sides. Another door fastens in that way. The west doors, about thirty in number, are sliding doors, and when closed are fastened by bolts pushed down with the foot into slots. Sometimes it would be discovered that in closing the building in the evening a bolt had not been pressed down, and the proof, coming from the lips of the plaintiff's own witness as well as the witnesses for the defendant, was that the watchman's first duty on coming into the building in the evening was to see that doors were closed and fastened. The plaintiff did not dispute this proof, but on rebuttal merely reiterated his claim that he had no instructions regarding doors, and said he was carried on the pay roll as a fireman. The plaintiff had pleaded that he was engaged in interstate commerce, the defendant being an interstate carrier, and the case was submitted to the jury to say whether or not the defendant was negligent in not furnishing the plaintiff a safe place in which to pursue his nocturnal, indoor, interstate commerce pastime of bell ringing.

There was just one fair dispute concerning the facts, and that was whether or not, when the plaintiff became watchman as well as fireman, he was drilled with respect to looking after the doors of the building. There was no rational ground for dispute to be settled by the jury that the plaintiff was watchman, "ringing bells" being a freight-house expression denot-

ing the duties of watchman, and the court should have instructed the jury to that effect. There was no dispute to be settled by the jury that the first thing for the watchman to do when he came on duty was to see that the doors were secured. A watchman of ordinary capacity might be expected to understand this fact without instruction. The plaintiff admitted he had gone about the building with the watchman, had observed open doors and had closed them. But if the plaintiff needed instruction, the defendant's negligence consisted, not in leaving the door unbolted or failing to appoint a watchman to guard its watchman while on guard, but in not telling the plaintiff to see that the door was bolted. This negligence was not relied on as a basis for recovery.

There was evidence that it was generally known there were persons about the freight house at different times of night looking for an opportunity to steal property in the defendant's care. An unlocked door would facilitate an attempt to steal should one be made. The defendant, however, had taken precaution against theft. Besides providing a man whose instructions were to close and bolt the doors each evening, it provided a watchman, who went through the freight house with a lantern hour by hour throughout the night, and the plaintiff testified there were other watchmen about the freight house and railroad yards. The duty to take precaution to protect the property of shippers from theft was owed to shippers, and not to the plaintiff. That duty was performed, and was performed in part through the agency of the plaintiff himself.

The omission of the doorman to bolt the closed door and the shooting of the plaintiff do not bear to each other the relation of cause and effect. Omission to bolt the door was fraught with no peril to the plaintiff, active or latent. Bolted or unbolted, the door was not a hazard which plaintiff encountered in his rounds, and omission to bolt it neither supplied nor set in action any dangerous instrumentality or agency. It merely created a condition which made entrance to the building less difficult than it otherwise would have been, should any one desire to enter. The injury resulted from the violent and malicious act of a desperate person who took advantage of the condition to enter the building for some purpose not disclosed. He may have gone there to steal. When

Fraser v. Railway Co.

surprised he exhibited such conduct as he willed, shot the plaintiff and fled, but conduct which originated with him, and which did not originate with the doorman or the. door the' evening before.

The plaintiff cites the well-known authorities to the effect that if the action of an intervening cause might have been anticipated, the intervening cause will not interrupt the connection between the original cause and the injury. The rule is sound, but it presupposes an original cause of injury which manifests consequences in an injurious result. We all anticipate pocket picking when the circus comes, and housebreaking during fair week, but the circus and the fair are not the causes of such crimes. We know, too, that should a housebreaker be discovered in the act of committing burglary, he might do violence to a person interrupting his depredation. But if, knowing the city to be infested with such characters, we go out for the evening leaving the back door unlocked and leaving a servant in the house, omission to lock the door is not the cause of the burglary, should one occur, or the cause of injury to the servant who tries to intercept commission of the crime. The cause of injury originates with the burglar, whose entrance into the house was not obstructed by a locked door. On the other hand, when an act or omission has bound up in it perils which, in the natural order of things, are liberated or eventuate through the conduct of a responsible human being which might have been anticipated, and injury results, the original act or omission is proximate cause. Potency to do harm was contained in the act or omission from the beginning, continued to threaten throughout the chain of events, and came to fruition in the ultimate injury, albeit the ultimate injury was promoted or precipitated through the agency of an intervening third person.

The principle involved is well illustrated by the case of *Clark v. Powder Co.*, 94 Kan. 268, 146 Pac. 320, which is cited by the plaintiff. Van Gray, the driller of an oil well, left solidified glycerine lying at the well. McDowell, an employee of the driller, carried the dangerous substance home with him. McDowell's mother required him to take it away, and he placed it in the fence surrounding an abandoned graveyard, where some

boys found it and exploded it. In the opinion of the court, prepared by Mr. Justice Dawson, it was said:

"No new power of doing mischief was communicated to the solidified glycerine by the acts of young McDowell. The power of doing mischief was inherent in the glycerine all the time. That some terrible accident was likely to happen in letting it out of the close custody of some one skilled in its use was not only natural and probable but almost inevitable." (p. 276.)

The plaintiff cites the case of *Horan v. Watertown,* 217 Mass. 185, which is clearly against him. The sewer department of the town kept dynamite in a tool chest, which could be opened without a key, which was not guarded, and which was left on a highway. Boys unlawfully took the dynamite from the box and threw it into a bonfire. The court stated the rule with reference to anticipating the independent act of a third person, and said:

"Tested by this rule, the plaintiff's case fails. While the dynamite and the other contents of the box were left in such a way that a thief might not find it very difficult to steal them, it can not be said that the defendant was bound to anticipate that this might be done and to guard against the consequences that might follow if a thief should steal the dynamite and so use it as to do injury to others. The general assumption of innocence would be inconsistent with this." (p. 186.)

Let it be supposed that the court held the action of the boys should have been anticipated. The case would then afford no comfort to the plaintiff. The danger lay in the dynamite from the beginning, which merely waited for some one to explode it to cause injury, as in the powder company case just referred to.

The plaintiff cites the case of *Norton v. Chandler & Co., Inc.,* 221 Mass. 99, which does not sustain his contention. Friction strips on the revolving door of a store were out of order and did not keep the door from spinning. As a woman was entering the store a wing of the door behind her struck her in the back. The door had been set spinning by a customer leaving the store in a hurry. It was held the act of the customer might have been anticipated. Here again the power to do mischief inhered in the defective door, and the wing of the door was the thing which struck the woman, not the customer.

In this case no faculty for harm resided in the door or was imparted to the door by the doorman, which finally functioned upon the plaintiff through the instrumentality of the intruder's pistol.

The plaintiff cites the case of *Filson v. Express Co.*, 84 Kan. 614, 114 Pac. 863, as a parallel case. The express company left a portable package worth $600, the value of which was plainly marked on the package, in a frame depot at the outskirts of a small town over night. The depot had no police protection or watchman, was used for the deposit of express matter, freight, and mail received on night trains, and had been burglarized. The doors of the building were locked and the windows were fastened, but some one broke a window and carried off the package in the nighttime. The question was whether or not the bailee used due care to prevent loss of the property in its custody, considering its tempting character, the security afforded, and all other circumstances. It was held the question was one for the jury. The point was made that the lack of better protection was not the proximate cause of the loss, and it was held that if, under all the circumstances, loss by burglary might have been foreseen, it was the proximate result of the breach of duty complained of.

The difference between the two cases has been indicated by what has already been said. The plaintiff seeks to appropriate a cause of action for breach of duty which did not relate to him. It was the duty of the defendant to protect the property of shippers from theft. An unbolted door would make theft easier, and theft of property might be anticipated as a result of not bolting the door, if the property had no other protection. As to the plaintiff, however, the unbolted door was merely a condition, and not a cause of injury. In the case of *Railway Co. v. Columbia*, 65 Kan. 390, 69 Pac. 338, it was said:

"A prior and remote cause can not be made the basis of an action for the recovery of damages if such remote cause did nothing more than furnish the condition, or give rise to the occasion, by which the injury was made possible, if there intervened, between such prior or remote cause and the injury, a distinct, successive, unrelated and efficient cause of the injury." (Syl. ¶ 2.)

If it could be conceived that because a door was not bolted the plaintiff fell through it into some space and was injured, the unsafe condition of the door would be the cause of his injury. The injury would be the natural, foreseeable, proximate result of the cause. Here the proximate and efficient cause of

9—101 Kan.

the plaintiff's injury was the unrelated and independent act of a reckless ruffian, who used the door to gain admittance to the building. While the plaintiff tried to reduce himself to the status of the inert and inanimate personal property in the building, he was part of the protection afforded to that property. He accepted employment as part of the barricade against theft, and not as a thing to be surrounded by an impregnable barricade. He was a guard over property, and not a thing to be guarded. The bell-ringing theory of his employment broke down. He had no case, and the motion for a directed verdict in favor of the defendant should have been sustained.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment for the defendant.