SCHMIDT v. UNITED STATES and seven other cases.

Nos. 3351–3358.

United States District Court
D. Kansas, Second Division.

June 16, 1949.

J. Sidney Nye, J. Rodney Stone and Bernard Peterson, Newton, Kansas, for plaintiff.

Lester Luther, United States Attorney, Eugene W. Davis, Assistant United States Attorney, and Malcolm Miller, Assistant United States Attorney, Topeka, Kansas, for defendant.

MELLOTT, District Judge.

The eight cases shown in the caption are before the court on motions to dismiss. All were instituted under the Federal Tort Claims Act,[1] arose from the happening of the same incident and involve essentially the same question of law.

The amended complaints show that Arnold M. Schmidt[2] and Carolyn Elizabeth Schmidt, on August 8, 1947 and continuing through September 7, 1947, were husband and wife and the parents of:

| | |
|---|---|
| Donald Lee, Age 15 | Paul David, Age 9 |
| Robert Eugene, Age 13 | Carolyn Louise, Age 7 |
| Arnold Allen, Age 12 | Lorene Ellen, Age 4 |
| Calvin Dale, Age 11 | Marvin LeRoy, Age 3 |

They resided approximately seven miles south of Newton, in Harvey County, Kansas. The explosion of a bazooka shell, on September 7, 1947, killed three of the children and severely injured the other five. The present suits seek recovery on account of the deaths and injuries.

Summarizing one of the complaints, typical of all, it is alleged that Engstrom, Morrison and others, employers of Arnold, at some time prior to August 8, 1947, had entered into a contract with the United States under which they were to cut, bale and remove prairie grass or hay on a target range on the Fort Riley Military Reservation. The reservation is approximately ninety miles from Newton. Arnold, in the course of his employment in the hay field, "found certain expended cartridges on said range, the more exact nature of which was to him, unknown, but which were later as-

---

[1] Act of Aug. 2, 1946, Ch. 753, 60 Stat. 842, as amended by Act of Aug. 1, 1947, Ch. 446, 61 Stat. 722, 28 U.S.C.A. §§ 1346, 2671 et seq.

[2] Hereinafter Arnold.

certained to be cartridges for use in connection with the weapon commonly known as a bazooka, which expended cartridges were by him removed from said area and brought to the home, * * * Arnold * * * believing said cartridges to have been fully expended or exploded and to be absolutely harmless." Thereafter, on September 7, 1947, in the absence of Arnold and his wife, the children "were playing with said cartridges" when one of them exploded, with great force and violence, inflicting the injuries set out in the several complaints.

Paragraph "Tenth" of the Amended Complaint in Docket No. 3351 reads:

"That the said defendant by and through its lawfully authorized officers, agents servants and employees while acting within the scope of their respective offices and employments as aforesaid was guilty of negligence which negligence was and is the direct, sole and proximate cause of the injuries and death of the said Calvin Dale Schmidt, deceased, and which negligence consisted of the following acts, to-wit:

"a) In permitting high explosive cartridges or rockets to remain promiscuously and indiscriminately on the ground or embedded in the prairie grass in said area of said military reservation without guard and without supervision.

"b) In permitting unexpended cartridges or rockets of high explosives to remain on a firing range in violation of rules and regulations covering the use thereof.

"c) In designating said firing range as an area on which prairie grass should be cut when the defendant knew or should have known that unexpended cartridges or rockets of high explosives were lying promiscuously thereon.

"d) In failing to clear said area of unexpended high explosive cartridges or rockets prior to opening the area to civilians for the harvesting of hay as hereinbefore alleged.

"e) In failing to use the utmost caution to protect said deceased from dangers from high explosive cartridges or rockets which said defendant knew or should have known to be upon said firing range, where said hay field was designated.

"f) In failing to protect or guard the agents, servants and employees of the said Clarence Engstrom, Lloyd Morrison and their said unknown associates from innocently taking possession of said high explosive cartridges when by such possession said defendant through its duly constituted officers, agents, servants or employees knew or should have known that such possession might result in serious injury or death incident to such innocent possession, occurring to persons thereafter coming into contact with said high explosive cartridges, and in particular that serious injury and death to said Calvin Dale Schmidt, said decedent, might result from said high explosive cartridges because of the aforesaid neglect of said defendant.

"g) In failing to warn or advise the said Arnold M. Schmidt, father of said decedent, that said cartridges were not fully expended or exploded and that they were dangerous to handle and that they might explode and injure or kill the person handling them.

"h) In failing to exercise the utmost prudence and caution to protect the public and especially the said Calvin Dale Schmidt, deceased, from injury or death by said unexploded high explosive cartridges or rockets when said defendant, by and through its officers, agents, servants and employees, knew or should have known that said high explosive cartridges or rockets were unexpended and by reason of the high explosive contained therein, inherently dangerous.

"That one or more or a combination of one or more of the foregoing acts of negligence on the part of the defendant acting as aforesaid through its lawfully authorized officers, agents, servants and employees, were and was the sole and proximate cause of the injuries and death of Calvin Dale Schmidt and of the damage sustained by the next of kin of said deceased".

 It has sometimes been stated that a motion to dismiss a complaint for failure to state a claim on which relief can be granted is a substitute for the former demurrer in an action at law and for the former motion to dismiss for want

of equity in suits in equity. The statement may be too broad; for the "rules do not in terms require that a complaint shall state facts sufficient to constitute a cause of action." Dennis v. Village of Tonka Bay, 8 Cir., 151 F.2d 411, 412. Cf. Andrews v. Heinzman, D. C., 8 F.R.D. 48 and cases cited. But "a motion to dismiss on the grounds that a petition does not state a claim on which relief can be granted, admits all facts well pleaded, and the legal question presented thereby is governed by the facts as pleaded." Galbreath v. Metropolitan Trust Co., 10 Cir., 134 F.2d 569, 570. It also admits all facts which can be reasonably inferred from the facts alleged. Wootten v. Wootten, 10 Cir., 151 F.2d 147, 150, 161 A.L.R. 1027. The "allegations of the complaint will be liberally construed in determining its adequacy to state a cause of action when the question comes up on a motion to dismiss", Gulf Coast Western Oil Co. v. Trapp, 10 Cir., 165 F.2d 343, 347; and "every material fact well pleaded in the complaint construed in the light most favorable to plaintiff is admitted." Porter v. Karavas, 10 Cir., 157 F.2d 984, 985. A complaint should not be dismissed for insufficiency of statements, "except when it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim asserted by him." Musteen v. Johnson, 8 Cir., 133 F.2d 106, 108.

■ The question to be decided has been correctly appraised by counsel and discussed in well-prepared briefs. It, in essence, is: Were the injuries and deaths of the Schmidt children caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant for such injuries or death in accordance with the law of Kansas?

First, a preliminary observation. Counsel for plaintiffs state upon brief that "negligence of the defendant—inferentially all of the allegations of negligence contained in the complaint, set out above—is admitted as true by the motion to dismiss."

Not so. Only *facts* well pleaded, are admitted. Legal conclusions are not. For present purposes, however, the facts even inferentially shown in the charges of negligence will be considered.

■ General principles of actionable negligence are passed without discussion and the court comes at once to the real issue to be determined. The motion to dismiss raises two questions: (1) Were the persons injured—the Schmidt children—within the class of persons which the government had the duty to protect from harm resulting from allowing unexploded bazooka shells to remain scattered upon the target range at Ft. Riley? and (2) Did the act of their father, Arnold, in removing the shells from the range without the permission or consent of any responsible officer of the government and taking them to his home, approximately ninety miles away from the military reservation, constitute a new, independent and efficient cause of the injuries? In other words, was his act, rather than any negligence on the part of the United States, the "proximate cause" or the "legal cause" of the injuries and deaths of his children? The second question will be discussed first.

Rather extensive quotation from a recent (1947) decision by the Supreme Court of Kansas charts a path for this court's approach. The case is Rowell v. City of Wichita, 162 Kan. 294, 176 P.2d 590, the quotation beginning at page 300 of the Kansas Report, 176 P.2d at page 595:

"The ordinary definition of negligence is 'lack of due diligence or care,' and a legal definition is that it is 'failure to exercise the care that the circumstances justly demand.' · * * * It is clear, however, that no cause of action for negligence is stated unless it is alleged that there is a duty on the part of one to protect another against injury, a breach of that duty, and that the injury received is the proximate result of that breach. Jones v. Atchison, T. & S. F. Railway Co., 98 Kan. 133, 157 P. 399. Negligence on the part of one in the use of his own property resulting in injury to another, may make the owner liable therefor, notwithstanding the general purpose for which the property is used

is lawful. McMullen v. Jennings, 141 Kan. 420, 41 P.2d 753. A person who seeks redress does not make out a cause of action by showing only that he suffered injury, but if not wilfully done he must show that the act as to him, had possibilities of danger so apparent as to entitle him to be protected against the doing of it although the harm was unintended. * * *

"In the multitude of decisions there are many definitions of the term 'proximate cause' but one of the most widely quoted is that the proximate cause of an injury is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the injury would not have occurred. The proximate cause is an essential element of liability for negligence. Negligence, no matter of what it may consist, cannot create a cause of action, unless it is the proximate cause of the injury of which the complaint is made. * * *

"The question of concurrent and intervening cause will be noted briefly. A particular cause may not be said to be concurrent unless without it the injury would not have occurred. It is a concurrent cause if it was a cause which was operative at the moment of injury and acted contemporaneously with another cause to produce the injury and was an efficient cause in the sense that without it the injury would not have occurred. * * *

"While it has been held that if two distinct causes are successive and unrelated in operation, they cannot be concurrent, St. Louis & S. F. Railroad Co. v. Justice, 80 Kan. 10, 101 P. 469; and Thummel v. State Highway Comm., supra [160 Kan. 532, 164 P.2d 72]; the rule that the causal connection between an actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause. Clark v. E. I. Du Pont De Nemours Powder Co.,

94 Kan. 268, 146 P. 320, L.R.A.1915E, 479, Ann.Cas.1917B, 340; Fraser v. Chicago, R. I & P. Railway Co., supra [101 Kan. 122, 165 P. 831, L.R.A.1917F, 749]. * * *"

Determination whether the causal connection between the actor's negligence and an injury is broken by the intervention of a new, independent and efficient cause is frequently fraught with some difficulty. As counsel for plaintiffs correctly point out, remoteness in time is not the correct test.

"A wrongdoer is not merely responsible for the first result of his wrongful act, but he is also responsible for every succeeding injurious result which could have been foreseen, by the exercise of reasonable diligence, as the reasonable, natural, and probable consequence of his wrongful act. * * *. But whenever a new cause intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequence could not have happened, then such injurious consequence must be deemed to be too remote to constitute the basis of a cause of action."

This general rule was early enunciated by the Supreme Court of Kansas in Atchison T. & Santa Fe R. Co. v. Standford, 1874, 12 Kan. 354, 377, 15 Am.Rep. 362, and has been consistently followed. A recent Kansas case applying essentially the same rule and cited by the Supreme Court in Rowell v. City of Wichita, supra, as requiring that the intervening cause be foreseen or reasonably forseeable, is Clark v. Powder Co., 94 Kan. 268, 146 P. 320, L.R.A. 1915E, 479, Ann.Cas. 1917B, 340. This case is discussed at some length by counsel for both parties presently before the court; so careful consideration of it by the court seems to be dictated.

The agent of a powder company, after shooting an oil well, carelessly left near it about a quart of solidified glycerine. A son of the owner of the farm, an employee of the drilling contractor, unskilled in the use of explosives, removed the glycerine, first to his home and later to a nearby abandoned

graveyard where he hid it in a crevice in a stone fence. Neither the powder company nor its agent ever gave the glycerine any further concern. More than two years later it was found by some boys, who, believing it to be tallow, hit it on a rock for the purpose of breaking off a piece to take home, which caused it to explode and injure them. Appeal to the Supreme Court from a judgment awarding damages resulted in affirmance, the court, after an exhaustive review of the authorities, being satisfied, as was the trial court, that the negligence of the powder company was the proximate cause of the injury to the boys.

While the facts pleaded in the cases at bar bear some similarity to those before the court in the Clark case there are important differences which, in the court's studied judgment, require that conclusion be reached negligence of the government was not the "proximate", or "legal", cause of the injuries to the Schmidt children. In the Clark case an employee of the powder company had left the explosive in an open field near an oil well where any number of persons might reasonably be expected to go. It was not left upon property belonging to and under the exclusive supervision of the powder company. One of two consequences might reasonably have been expected to follow—that it would remain there until exploded by a chance passer-by or that, as actually eventuated, it would be disposed of in such a fashion that it would continue to be a menace to the public generally. Here, however, the explosive was on a target range, belonging to the government and apparently closed to the public. Moreover, it inferentially appears that, at least periodically, unexploded shells were gathered up and removed from the range. Since neither Arnold nor any other mere licensee had authority to remove any such property from the range, neither of the two consequences, above referred to as being present in the Clark case, existed. Then, too, in the Clark case it is clear that the removal of the glycerine by the young man had been to a place of greater safety. Thus his act did not add to the chance that injury might befall someone. Rather, it was but a link in the chain of events reasonably to be expected from the primary actor's negligence.

The conclusion, which has been reached, that at least the second ground of the motion is good, it is believed, accords with the rationale of the Clark case, with the quoted portion of the opinion of the Massachusetts court in Stone v. Boston & Albany Railroad, 171 Mass. 536, 51 N.E. 1, 3, 41 L.R.A. 794, contained therein and with later decisions by the Supreme Court of Kansas. In the Stone case it was pointed out that the test is not whether the injury was a possible consequence of the original negligence "but whether it was probable; that is, likely to occur, according to the usual experience of mankind." "* * * it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable." Judge Learned Hand expressed somewhat the same view in The Mars, D.C., 9 F.2d 183, 184, saying:

"I do not think it is enough, and I do not think anyone supposes it is enough, that in the mere train of physical causation the result should follow from the wrongful act. There must also be some mental element. It has got to be one of those consequences which is not entirely outside the range of expectation or probability, as ordinary men view it."

The same thought is reiterated by the Supreme Court of Kansas in Rowell v. City of Wichita, supra, in the last sentence quoted above—"the rule that the causal connection between an actor's negligence and an injury is broken by the intervention of a new, independent and efficient intervening cause, so that the actor is without liability, is subject to the qualification that if the intervening cause was foreseen or might reasonably have been foreseen by the first actor, his negligence may be considered the proximate cause, notwithstanding the intervening cause." The government, this court believes, could not reasonably have foreseen the chain of circumstances disclosed by this record.

Moreover, other late Kansas cases suggest additional reasons to hold that ac-

tionable negligence of the government has not been pleaded and cannot be shown. Serviss v. Cloud, 121 Kan. 251, 246 P. 509, for example, recognizes that where explosives are wrongfully carried away from the place where stored, by children capable of understanding the wrongful nature of their act, the negligence in keeping or storing cannot be regarded as the proximate cause of a subsequent injury to the child or other children where the defendant had done nothing to invite or provoke the act of the child and there is nothing in the circmumstances which would cause it to be foreseen. A fortiori, the act of an adult in wrongfully carrying away from a military reservation unexploded ammunition must be held to have been the "proximate", or "legal", cause of the injuries received by his children, who were permitted to play with it.

Cases cited by counsel for the plaintiffs, stressing that the "highest degree of care" or "the utmost caution" must be exercised in the handling and storage of explosives to the end that young children will not be injured, have, of course been considered. It is sufficient here to say that the rule of such cases is not applicable under the present facts. Nor has the court overlooked the line of cases cited as applying the rule laid down in Clark v. Powder Co., supra. In Fraser v. Railway Co., 101 Kan. 122, 165 P. 831, 834; L.R.A.1917F, 749, "the proximate and efficient cause of the plaintiff's injury" was held to be "the unrelated and independent act of a reckless ruffian * * *." In Walmsley v. Telephone Association, 102 Kan. 139, 169 P. 197, 199, "The want of a hunter's license and the breach of the hunter's license law" was held not to have contributed "in the slightest degree to plaintiff's injuries." In Beldon v. Hooper, 115 Kan. 678, 224 P. 34, 37, the negligence of the defendant in failing to pack bottles of carbon disulphide in cartons and excelsior was held not to have been the cause of injuries received by burning, the "unknown, but nevertheless certain, origin of the fire [being] the ap-

proximate cause of plaintiff's injury, an extraordinary consequence which defendant could not reasonably have anticipated, and for which he cannot be subjected to liability." In Smith v. Mead Construction Co., 129 Kan. 229, 282 P. 708, 710, the construction company was found to be negligent in not erecting barriers and warning signs; but it was absolved of liability to one who was injured through the negligent operation of a car in which he was riding, the latter act of negligence being "successive to and unrelated to" the negligence of the construction company. In Durst v. Wareham, 132 Kan. 785, 297 P. 675, syllabus 3 by the court indicates the holding—"Where an injury is due to two causes, one an inanimate thing for which no one is liable, and the other a negligent act of another, without which the injury would not have occurred, the person who committed the negligent act is liable." Perhaps the case most helpful to the plaintiffs is Early v. Burt, 134 Kan. 445, 7 P.2d 95, where the court declined to set aside a judgment against a contractor, whose original negligence produced an unsafe condition and was the efficient cause of the injury, although there was evidence indicating that the city might also have been guilty of some negligence. But collectively the cases support the conclusion this court has indicated it feels must be reached.

This, already too long and somewhat labored, opinion will be brought to a conclusion. While discussion has been largely of the second part of the motion the first, likewise, seems to be good. Assuming that the government, for the protection of persons lawfully on the target range, should have removed the unexploded shells, it is difficult to see how its failure to do so constituted negligence to children not being upon, nor having any right to be upon, the range. The court has therefore concluded that the motions to dismiss should be sustained upon both grounds. Orders so providing should be prepared by counsel for the United States.