**UNITED STATES of America,**
**Appellant,**

v.

**Robert STOPPELMANN, a minor, by**
**Mary Stoppelmann, his mother**
**and next friend, Appellee.**

**No. 16144.**

United States Court of Appeals
Eighth Circuit.

April 17, 1959.

Robert E. Brauer, Asst. U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., was with him on the brief), for appellant.

Alfred L. Boisaubin, St. Louis, Mo., for appellee.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

GARDNER, Chief Judge.

This appeal is from a judgment in favor of appellee who by his next friend brought action against the United States under the Federal Tort Claims Act to recover damages for personal injuries. We shall refer to the parties as they were designated in the trial court. It was charged in the complaint that on the 16th day of June, 1956, certain units of the United States Navy and the United States Marine Corps Reserve Training Center conducted a mock battle, bivouac, and/or maneuver in an area near Jefferson Barracks, Missouri; that the grounds on which this maneuver was conducted comprised some 150 acres and is described as being a primitive area, thickly wooded, with dense undergrowth traversed by paths; that the property was not enclosed by fence although it had a fence along one side; that following this maneuver plaintiff, at that time approximately 12 years old, together

with several playmates, entered upon the grounds where the maneuver had been carried out and picked up a large number of .30 caliber live blank cartridges which, it was alleged, were negligently left on the ground and not removed following the maneuver. Negligence was alleged in various particulars in that the children, including plaintiff, were given no warning as to the dangerous instrumentalities so left on the ground, that they had not been forbidden to play on the grounds, that defendant had negligently failed to adopt any measures to prevent children from obtaining the cartridges, and that defendant knew, or in the exercise of ordinary care ought to have known, that some injury would result to children permitted access to said locality. Other acts of negligence were alleged. It was then alleged that plaintiff and his playmates after having picked up the live blank cartridges attempted to explode the live blank cartridges by discharging or shooting the pellet from a BB air rifle at the center point or primer of a live blank cartridge, and that in doing so the cartridge exploded with such force that it rebounded the pellet or BB which struck the plaintiff in the eye, inflicting such injuries that he lost the sight of the eye. *Other allegations go to the extent* of the injury. The answer of defendant put in issue all allegations of negligence and affirmatively charged that plaintiff's injuries were caused by plaintiff's own negligence or that his negligence contributed thereto.

The case was tried to the court without a jury as provided by the Federal Tort Claims Act of August 1, 1947, Ch. 446, 61 Stat. 722, 28 U.S C.A. § 2402. The court made detailed findings, finding among other things, that plaintiff was a minor, born July 10, 1944, that he had just finished the sixth grade in school with average grades; that,

"On June 16, 1956, a batallion of the United States Marine Corps commenced a maneuver encampment in Jefferson Barracks, Missouri, an area of some 160 acres, owned and operated by the United States. Some 70 Marines comprised this batallion, and they were issued cartridge belts, .30 caliber rifles, machine guns, machine gun belts and clips and .30 caliber blank cartridges. Approximately 7,000 rounds of these blank cartridges were issued during the encampment which was concluded the following day, June 17, 1956, when the entire batallion vacated the premises.

"Said blank cartridges contained an explosive powder and primer caps, designed to ignite the powder, and these cartridges constituted explosive materials.

"Defendant was negligent in failing properly to police the Jefferson Barracks maneuver area from the time the maneuvers were terminated, June 17, until June 19.

"Defendant was negligent in failing adequately to exclude this plaintiff and his friends from the maneuver area from the time the maneuvers were commenced, June 16, until June 19.

"Upon the termination of these maneuvers, plaintiff and his friends visited the area and on June 17 and June 18, found and accumulated between 63 and 75 unused and live blank .30 caliber cartridges, left in the maneuver area by said marine battalion.

"On June 19, 1956, plaintiff and his friends were shooting at the primer cap of one of these live blank cartridges, which had been placed sideways on top of a 2″ x 4″ piece of wood driven into the ground. The shooting instrument was a B. B. air rifle. Plaintiff shot a B.B. pellet from said air rifle and exploded said live cartridge so positioned. The cartridge that was thus exploded was one found by one of plaintiff's neighborhood companions, Robert Piva, of comparable age to plaintiff. The explosion of the cartridge caused the B.B. pellet to lodge itself into plaintiff's left eye.

"Said eye of plaintiff was subsequently enucleated as the direct and proximate result of said explosion, and said explosion was the direct and proximate result of defendant's aforesaid negligence in failing properly to police and adequately to exclude plaintiff and his friends from the maneuver area.

"Plaintiff did not have sufficient prior experience with or knowledge of the dangerous properties of .30 caliber cartridges or other explosive materials to warrant charging him with contributory negligence.

"None of the actions of plaintiff's other companions on June 19, 1956, was sufficient to be constituted as intervening or efficient causes of plaintiff's injury.

\* \* \* \* \* \*

"The personnel of said Marine Corps Battalion were members of the Military forces of defendant and were acting in line of duty during the entire period of their encampment in the Jefferson Barracks maneuver area on June 16 and June 17.

"The maintenance and control of the Jefferson Barracks maneuver area were under the sole and exclusive jurisdiction of defendant.

"The said area is immediately bordered by heavily populated housing units on the south and east sides. There was a fence on the western edge of the area only.

"Defendant knew or by the exercise of due care, could have known that young children habitually frequented said maneuver area before, during and after said maneuvers.

"Defendant knew or by the exercise of due care, could have known that it permitted a large quantity of unused cartridges to be and remain exposed and unguarded in said area upon vacation thereof, and that said unused cartridges would be readily accessible to young children, and would then and thereby constitute dangerous instrumentalities in their hands, and likely to cause them to be injured thereby."

The court concluded as a matter of law that plaintiff's injuries were proximately caused by the negligence of the defendant and accordingly entered judgment for $30,000.00.

Defendant seeks reversal on substantially the following grounds: (1) that the court's finding that the .30 caliber live blank cartridge exploded and caused the BB to lodge itself in plaintiff's eye was not supported by substantial evidence, (2) that the court's findings that the United States was negligent in failing to properly police the maneuver area after the maneuvers terminated on June 17 and was negligent in failing adequately to exclude plaintiff from the maneuver area are not supported by substantial evidence, (3) that the court's finding that the explosion of the .30 caliber live blank cartridge was the direct and proximate result of the negligence of the United States is not supported by substantial evidence, (4) that the court's finding that plaintiff was not contributorily negligent is not supported by substantial evidence, and (5) that the court erred in sustaining plaintiff's objection to the following question propounded to the plaintiff on cross-examination:

"Q. Did your father tell you anything about these live blanks other than to get rid of them? A. Yes, sir.

"Q. What did he tell you?

"Mr. Chopin: Object, being in the nature of hearsay.

"The Court: Sustained."

There is little or no dispute as to the basic facts in this case, but the conclusions and inferences drawn from these facts are challenged by defendant as being unwarranted by the undisputed evidence. The findings of the court are presumptively correct and should not be set aside on appeal unless clearly erroneous or based upon an erroneous view of the applicable law. Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

In considering the question of the sufficiency of the evidence to sustain the findings, the evidence must be viewed in a light most favorable to the prevailing party, and the prevailing party is entitled to the benefit of all such favorable inferences as may reasonably be drawn from the facts proven. The trier of facts, whether court or jury, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and on appeal all conflicts in the evidence will be presumed to have been resolved in favor of the prevailing party.

It is argued by defendant that there was in fact no substantial evidence that the blank cartridge exploded, but that the injury to plaintiff's eye resulted from the ricochetting or rebounding of the BB pellet from the gun which he shot at the cartridge. There was testimony of doctors to the effect that it required a great deal of force to lodge a blunt object like a BB into the tough fibers of an eyeball to a depth of 15 mm. There was testimony by the plaintiff that the cartridge exploded and there was testimony by at least two other boys that they heard the cartridge explode. Following the explosion the primer cap was gone from the cartridge and the red cardboard wad had been singed and was out of normal position, and there was not as much powder in the shell immediately following the accident as is normally in such shells. The force with which the BB pellet struck plaintiff's eye might well have been considered as corroborating evidence that the pellet was propelled by the explosion rather than rebounding from its own force. It is true as charged by the defendant that the burden of proof was on plaintiff but as already observed, the weight of the evidence and the credibility of the witnesses was for the trier of facts, and viewing the evidence in the light most favorable to the plaintiff, we think the court was warranted in inferring that the injury to plaintiff was caused by the explosion of the blank cartridge. In fact, defendant's counsel in their brief, stating the facts say: "The plaintiff sustained an injury to his left eye on Tuesday, June 19, 1956 as a result of the explosion of the live blank cartridge. * * * The cartridge exploded causing the BB to lodge in plaintiff's left eye, which was subsequently enucleated," and again he says, "When he shot the second time, the cartridge exploded * * *." These statements of counsel for defendant reflect their appraisal of the evidence and accord with the views as expressed by the court in its findings.

It is next argued that the court's finding that the defendant was negligent in failing adequately to police the maneuver area and failing to adequately exclude plaintiff and his companions therefrom is not warranted by the evidence. It appears without dispute that during or following the maneuver the plaintiff and his companions picked up on the maneuver grounds some 75 of these live blank cartridges. These were the exact kind of ammunition being used during the maneuver and the inference is irresistible that they were left on the maneuver field by the participants in the maneuver. That itself was at least some evidence of negligence and while there was evidence that the officers in charge directed or ordered a cleanup, such cleanup was manifestly not a success and was evidence of a second act of negligence. In the exercise of care commensurate with the danger involved, those participating in or in charge of the maneuver should certainly have been able to find the cartridges where they had left them. The plaintiff and his companions without any advance knowledge as to where the cartridges had been left were able to find them, and the result of the so-called cleanup bespeaks want of care commensurate with the danger involved by exposing these dangerous agencies so that they might be picked up by children or those of immature judgment. This area was long prior to this maneuver frequented by the plaintiff, his companions, and other minors as a playground. There were no warning signs excluding children and no admonitions as to the presence of explosives in the

area. The cartridges, especially in the hands of minors, were dangerous agencies. One handling explosives must exercise a degree of care commensurate with the danger of exposing them to access, particularly by children and those of immature judgment. As said by the Supreme Court of Missouri in Boyer v. Guidicy Marble, Terrazzo & Tile Co., Mo., 246 S.W.2d 742, 745:

"There is another exception to this general rule which is recognized in this state. This, that one who is under the duty to exercise the care in using, maintaining, and handling extremely dangerous explosives which a reasonably careful person would exercise under the same or similar circumstances, owes a duty especially to children and those of immature judgment, irrespective of the fact that the status of the person may be that of a trespasser or licensee."

Plaintiff had just completed the sixth grade of elementary school. His actions and that of his companions made it quite clear that they were of immature judgment. The court not only heard their testimony but observed them on the witness stand and was in a position to appraise their maturity. The applicable rule is stated in 10 A.L.R.2d at 29, as follows:

" * * * the courts are in complete agreement that, as a general rule, owing to the dangerous nature of explosives, especially in the hands of young children, who cannot be expected to know and appreciate the danger, one who keeps or uses explosive substances must exercise a high degree of care to prevent injury to children who may have access to or come into contact with such substances, the degree of care being commensurate with the nature of the substance and the danger involved."

We think the finding of the court that defendant was negligent in failing properly to police the maneuver area especially when the presence of children was known or should have been known is supported by substantial evidence.

■ Defendant contends that the Government's negligence was not the proximate cause of plaintiff's injury. The question of proximate cause as well as the question of negligence is usually one of fact to be determined by the court or jury and not one of law. It is here argued that the acts of the children were intervening causes. We cannot agree. Lottes v. Pessina, Mo.App., 174 S.W.2d 893; Gaines v. Property Servicing Co., Mo., 276 S.W.2d 169; Schmidt v. United States, D.C., 84 F.Supp. 496, affirmed 10 Cir., 179 F.2d 724. Certainly the negligence of the defendant in leaving these dangerous explosives exposed and accessible to children and those of immature judgment with knowledge that they were so exposed constituted a substantial factor in bringing about plaintiff's injuries. We think there was no error in the finding that the negligent acts of the defendant constituted the proximate cause of plaintiff's injuries.

■ It is contended by defendant that the court erred in holding that plaintiff was not guilty of contributory negligence. On this issue defendant had the burden of proof and the question of contributory negligence is ordinarily one of fact to be determined by the trier of facts. In their brief, counsel for defendant summarize the test of a minor's negligence based on the holdings of the Supreme Court of Missouri. They say, "Where the minor does not know, or have the capacity to appreciate, the risk his conduct assumes, and then he embarks upon the course of conduct leading to injury before thinking of its consequences in terms of possibilities and probabilities, it becomes a question of fact for the trier of fact whether or not he is contributorily negligent." The burden was on the defendant to show that plaintiff appreciated the danger involved in his conduct. He was a minor, 11 years and 11 months old, had finished the sixth grade of public school, and was with companions of about the same age. He had had some experience in the matter

of explosives and had had a warning by his father that these blank cartridges were dangerous and to get rid of them. He had had some slight experience with firearms and he had heard a lecturer say that blank ammunition was very dangerous, and one could get hurt just as bad at close range as one could with a regular pistol shot. The Supreme Court of Missouri in Wilson v. White, Mo.App., 272 S.W.2d 1, 6, reviewed many of the decisions of the appellate courts of that State bearing on the question of contributory negligence by a minor. In that case, the plaintiff, a minor 13 years of age, had finished the eighth grade in school. In the course of the opinion it is said, inter alia:

"The adjudicated cases demonstrate that, under certain circumstances, minors may be found guilty of contributory negligence as a matter of law. However, it is clear 'that the same standards do not apply in the case of an infant of tender years and an adult, so far as the doctrine of contributory negligence is concerned. For no court can hold that childhood and manhood are bound to observe the same degree of diligence' Jackson v. Butler, 249 Mo. 342, 155 S.W. 1071, 1079 (16). In short, a child should be judged as a child and not as an adult. It has been uniformly held that the care and caution required of a minor, who is of sufficient age to be chargeable with contributory negligence, is that ordinarily exercised by others of the same age, experience and capacity under the same or similar circumstances. 'Knowledge and appreciation of the danger and risk of injury, actual or imputed, is essential in order that a child may be guilty of contributory negligence. Mere knowledge that injury might result, without appreciation of the risk of injury to which his conduct exposed him, is not sufficient.' Turner v. City of Moberly, 224 Mo.App. 683, 26 S.W.2d 997, 998. For the

law recognizes that thoughtless conduct, implusive action and immature judgment are concomitants of youth; and that, although '(a) boy may have all the knowledge of an adult. respecting the dangers which will attend a particular act, * * * at the same time he may not have the prudence, thoughtfulness, and discretion to avoid them which are possessed by the ordinarily prudent adult person.' Burger v. Missouri Pac. R. Co., 112 Mo. 238, 20 S.W. 439, 441; Holmes v. Missouri Pac. Ry. Co., 190 Mo. 98, 88 S.W. 623, 625.

"Since '(t)here is no fixed rule of law by which to gauge, or scale by which to nicely weigh, the acts of a minor to determine if he is guilty of contributory negligence' (Jackson v. Butler, supra, 155 S.W. loc. cit. 1079), and since, in each case, not only the age of the minor but also 'the peculiar circumstances of the particular case, the knowledge and experience of the child in reference to those circumstances, and his capacity to appreciate the danger' must be taken into consideration (Moeller v. United Rys. Co., 242 Mo. 721, 147 S.W. 1009, 1012(6)), the question as to whether a minor servant has been guilty of contributory negligence, i. e., whether such servant knew and appreciated the dangers of his employment and the risk of injury, is usually for the trier of fact. That a plaintiff was guilty of contributory negligence can be declared by the court, as a matter of law, only where reasonable minds cannot differ as to plaintiff's negligence; and, '(t)he whole evidence and all legitimate inferences deducible therefrom are viewed in the light most favorable to plaintiff and taken as true while the evidence and inferences favorable to defendant are disregarded in ruling the issue of contributory negligence as a matter of law.' Thompson v. Byers Transp.

Co., 362 Mo. 42, 239 S.W.2d 498, 500(4), and cases there cited."

Bearing on the question as to whether he appreciated the danger of his conduct he testified that he expected that when the cartridge discharged he expected the red part to fly out forward, that he expected that by hitting the primer, the shell would go off and make a flash and a noise, that prior to the accident he never exploded a .30 caliber shell, that he expected the shell to explode and that would be all; that on the Saturday before the accident he saw powder from a shell ignited and set on fire, just burning up without an explosion; that on the Sunday before, one of his friends ignited powder from a shell and it just burned up, making a flash and a puff of smoke without an explosion; and that by striking the primer, the shell would explode and the powder go out the front. In view of the court's finding on this question we must assume that the court credited this testimony, and viewing the evidence in a light most favorable to the plaintiff we cannot say as a matter of law that plaintiff appreciated the danger of his conduct. That, under the evidence, was a question of fact and could not be determined as a question of law.

It is finally contended that the court erred in sustaining plaintiff's objection to a question propounded to plaintiff on cross-examination as to what his father said to him concerning the dangerous character of the blank cartridges. Having answered the question as to what his father had said he was asked whether or not his father had said "anything about these live blanks other than to get rid of them?" To this inquiry plaintiff answered in the affirmative and he was then asked, "what did he tell you?" This was objected to as being hearsay and the objection was sustained. There was no offer to prove what the witness, if permitted to testify, would have said. To warrant a reversal it is incumbent upon an appellant to show not only that technical error occurred but that the error was prejudicial. Without knowing what the witness would

have said if permitted to answer, it is impossible for us to conclude that defendant was prejudiced by the ruling now complained of. The general rule is that a ruling rejecting testimony is not reviewable in the absence of an offer of proof. Gantz v. United States, 8 Cir., 127 F.2d 498; Proechel v. United States, 8 Cir., 59 F.2d 648; Cavanaugh v. Fireman's Fund Ins. Co., 8 Cir., 197 F.2d 853. It is equally well settled that where the fact sought to be proven is otherwise established the error, if any, is not prejudicial. Proechel v. United States, supra. In the instant case what the father told the plaintiff is established by the testimony of the father. We are clear that this ruling of the court was not prejudicial to the defendant.

We have considered all other contentions of the defendant but think them without merit. The judgment appealed from is therefore affirmed.