**GEER–MELKUS CONSTRUCTION COMPANY, formerly Geer-Maurer Construction Company, a Corporation, and Pennsylvania Fire Insurance Company, a Corporation, Appellants,**

v.

**UNITED STATES of America for the Use of BISON CONSTRUCTION CO., a North Dakota Corporation, and Kemper Construction Company, a North Dakota Corporation, Appellees.**

No. 16907.

United States Court of Appeals
Eighth Circuit.

April 26, 1962.

Robert Vaaler, Grand Forks, N. D., for appellant.

Philip B. Vogel, of Wattam, Vogel, Vogel, Bright & Peterson, Fargo, N. D., for appellee Bison Const. Co.

Richard H. McGee, of McGee, Van Sickle & Hankla, Minot, N. D., for appellee Kemper Const. Co., and Henry G. Ruemmele, Grand Forks, N. D., with McGee, Van Sickle & Hankla, Minot, N. D., on the brief.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and HENLEY, District Judge.

VAN OOSTERHOUT, Circuit Judge.

In this action, tried to the court, the use plaintiff Bison Construction Co. (Bison) was awarded judgment against Geer-Melkus Construction Company (Geer-Melkus) and the surety [1] on its construction bond for a balance of $16,196.19 due on its subcontract to perform certain work for Geer-Melkus, the prime contractor, on a construction project at the Grand Forks Air Force Base. Kemper Construction Company (Kemper) as subcontractor of Bison who was made a third party defendant recovered judgment on its counterclaim for repairing the cracked pipe in the amount of $580.82.

This action was prosecuted under the Miller Act, 40 U.S.C.A. § 270a et seq. Jurisdiction is established.

The trial court's memorandum opinion reported at 195 F.Supp. 362 fairly states the issues and incorporates the court's findings of fact and sets out the basis for its decision.

The rather complicated pleadings are fairly described in the trial court's opinion. The ultimate issues upon which this case turns are simple. Bison brought

---

1. The liability of the surety, Pennsylvania Fire Insurance Company, turns on the liability of its principal. For simplicity in this opinion, Geer-Melkus will be treated as the sole defendant.

this suit to recover a balance of $16,-196.19 alleged to be due it under its sub-contract. Geer-Melkus does not dispute that it has withheld payment of such amount from the contract price but claims it is entitled to credit in this amount because of damage caused by water escaping by reason of a break on April 12, 1959, in the water line installed by Kemper by arrangement with Bison, in fulfillment of the latter's contract with Geer-Melkus. The fact that damages were incurred in such amount by escaping water is not disputed.

Geer-Melkus, in its pleadings, claims it is entitled to an offset of the aforesaid $16,196.19 damage for one or more of the following reasons:

1. Negligence by Bison or Kemper in laying the pipe without adequate ground cover.

2. Breach of an express or implied warranty that water mains would be installed in such a manner as to be satisfactory for their intended purpose.

3. Breach of the subcontract to properly install the water mains.

The trial court rejected such affirmative defenses and awarded Bison judgment for the unpaid balance on its contract,[2] and Kemper judgment on its counterclaim for repairing the pipe.

Upon this appeal, Geer-Melkus contends that the court erred in making the following fact findings:

A. "Kemper accompanied by a representative of Bison informed Geer-Melkus that the water main installation had been completed but that an additional two feet of soil cover was necessary to protect the water main during the winter months."

B. "The laying of the storm sewer practically on top of the main, the breaking of the main in January by Geer-Melkus, the resulting soaking of the surrounding earth by water, and the leaving of the water main for more than a month with only flax straw for cover, were all contributing factors."

C. "Kemper installed the water main according to the plans and specifications provided with materials that met the required Government standards."

Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A. requires that findings of fact by the trial court "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Such rule is based upon sound legal principles and has been uniformly applied by the courts. We have repeatedly held that we will not attempt to substitute our judgment, based upon the cold record, for that of the trial court in determining credibility of witnesses and disputed fact issues. The responsibility for determining credibility and disputed fact issues is vested in the trial court. The trial court's fact findings can be set aside only upon clear demonstration that they were without substantial evidentiary support or induced by an erroneous view of the law. Fact findings supported by substantial evidence cannot be upset. Transport Mfg. & Equip. Co. v. Fruehauf Trailer Co., 8 Cir., 295 F.2d 223, 227; Nelson v. Seaboard Surety Co., 8 Cir., 269 F.2d 882, 886; Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, 138.

The trier of fact, whether court or jury, is the sole judge of the credibility of witnesses and the weight to be given their testimony. Upon appeal the evidence, including such inferences as may be reasonably drawn therefrom, is to be viewed in the light most favorable to the prevailing party. United States v. Stoppelmann, 8 Cir., 266 F.2d 13, 17; Pendergrass v. New York Life Ins. Co., supra.

2. Bison has paid Kemper the amount called for by the Bison-Kemper subcontract for the construction of the water main.

■ With the foregoing well-established rules in mind, we look to the evidence for the purpose of determining whether the challenged findings are supported by substantial evidence. The controlling issues in this case are fact issues. It is apparent that the trial court's fact findings were not induced by any erroneous view of the law.

Bison entered into a subcontract with Geer-Melkus, the prime contractor, to do certain of the work on the Government construction project here involved, including the laying of the water mains in accordance with the plans and specifications. Kemper, a subcontractor under Bison, did the work of laying the water mains. The installation of the water mains was accelerated to accommodate Geer-Melkus so that it would have needed water at the construction site. The laying of the pipe was completed in October, 1958. The installation included a shutoff valve for controlling the flow of water into the pipe line here involved.

On January 13, 1959, Geer-Melkus employees, while making an excavation for an oil tank, hit a section of the water main with a back hoe puncturing it and causing a considerable amount of water leakage. Because of cold weather immediate repairs could not be made. The water was shut off, the water leakage was pumped out, and the excavation at the point of the break was filled with fifty bales of flax straw. There is evidence that filling the hole with flax straw is proper procedure under the circumstances but there is also evidence that the straw does not afford as much protection against frost as dirt. The break in the main was satisfactorily repaired by Bison by laying a section of new pipe in March of 1959. It is not claimed that either Bison or Kemper are legally responsible for the January break caused by the operation of the back hoe by Geer-Melkus employees.

On April 12, 1959, a break in the water main occurred. Geer-Melkus claims such break was caused by reason of the failure of Bison and its subcontractor Kemper to place seven feet of dirt fill over the main, as called for by the plans and specifications. This is the break that allowed water to escape which caused the $16,196.19 damage to the project for which plaintiff seeks the right of offset. This break occurred in the segment of the pipe line approximately twenty feet distant from the January break.

The prime contract, as well as the subcontract, required that all pipe be covered to a depth of seven feet. It is established that the pipe at places, including the segment involved in the April break, had but five feet of dirt cover. There is evidence that the plans called for additional cover sufficient to make the total coverage seven feet by grading; that such grading is usually the last thing done on a project; that the grading could not be properly completed until after the construction of the runways into the building, and that the runways were not built until after the April break.

There is undisputed testimony from the Government supervising engineer that the pipe was laid at the depth and elevation called for by the plans and specifications, and that all the pipe line work was done in accordance with the plans, and that five foot of cover was sufficient at that stage of the contract, and that the seven foot fill was required only at the time of the completion of the grading. It is not claimed that the material furnished was defective or that any workmanship was defective except with respect to the seven foot cover requirement.

With respect to finding "A", supra, Geer-Melkus in its brief states:

"This finding is the key to this entire case. This finding rests entirely on the testimony of two witnesses. Donald Theisen testified that in October of 1958, when Kemper had completed their work under their subcontract, that he informed Paul Forbis [Geer-Melkus superintendent] that a portion of the water main had only five feet of covering dirt over it and could not be used during the winter months.

"Donald Theisen's testimony is contradicted by the testimony of Paul Forbis.

\* \* \* \* \* \*

"The trial court in considering this case, had before it a clear conflict in the testimony of two witnesses."

Geer-Melkus goes on to say that Theisen's testimony as to notice to Geer-Melkus of the deficiency in dirt cover is categorically denied by defendant's superintendent Forbis, and that Forbis' testimony is corroborated by inferences fairly drawn from the record.

Theisen's testimony alone affords substantial evidentiary support for finding "A". Theisen testified as follows: "Theisen, prior to leaving the job site, told Walt Olson of Bison Construction and Forbis of Geer-Melkus that the line did not have sufficient cover to stand the cold temperature of the area." It is conceded that Theisen had a visit with Forbis, and Forbis admits that Theisen told him of the location of the water shutoff valve.

It was for the trial court, having the benefit of seeing and hearing the witnesses, to determine the credibility of such witnesses and to determine which of the admittedly conflicting testimony to believe.

We believe that the circumstantial evidence and the record, as a whole gives at least as much support to Theisen's testimony as it does to Forbis'. A reasonable basis for inference exists for finding knowledge by Geer-Melkus as to the depth of the fill at the point of the break. As prime contractor Geer-Melkus was entirely familiar with the plans and specifications, and should have been aware of the fact that contractual grading about the building in the area of the break had not been completed. There is testimony that Geer-Melkus supervisory employees observed the pipe line construction from time to time. Moreover, the evidence is clear that superintendent Forbis inspected the January break and supervised the emergency steps taken at that time, and there would appear to be room for inference that, at least at the time of the January break, Geer-Melkus acquired knowledge as to the depth of the fill.

Thus, we must conclude that the court's finding that Geer-Melkus was warned of the inadequate cover to protect the water main during the winter months is supported by substantial evidence and that such finding is not clearly erroneous. Such finding supports the court's conclusion that:

"What has heretofore been said concerning the lack of any showing of negligence on the part of Bison and Kemper could be here repeated, but it is enough to say that *if* the lack of sufficient cover caused the main to break in April due to frost penetration of the ground surrounding the main, it was, nevertheless, the escaping water which caused the damage. Geer-Melkus, after assuming control of the water main and using it with full knowledge that there was insufficient cover, cannot be heard to complain this late in the day." 195 F.Supp. 364.

Our examination of the evidence, some of which has heretofore been set out, satisfies us that there is substantial evidentiary support for challenged findings "B" and "C", supra.

Since we agree with Geer-Melkus that finding "A" is a key finding, dispositive of this appeal, we deem it unnecessary to discuss the evidence supporting findings "B" and "C" in detail.

Findings "B" and "C" lend added support to the trial court's conclusion that Geer-Melkus' asserted damage resulting from water escaping from the pipe as a consequence of the April 12, 1959, break was not caused by any negligence on the part of Bison or Kemper, or any breach of warranty or contractual obligation by either of them.

The judgment is affirmed.