### GEORGE v. COX.

No. 3034.

Court of Civil Appeals of Texas. Eastland.

Oct. 2, 1953.

Marvin Sprain, McMahon, Springer, Smart & Walter, Abilene, for appellant.

Scarborough, Yates, Scarborough & Black, Abilene, for appellee.

LONG, Justice.

The following statement of the nature and result of this suit in appellant's brief is conceded by appellee to be correct:

"Plaintiff, O. H. Cox, filed this suit in the District Court of Fisher County, Texas, to recover damages for injuries to his cotton crop. He alleged that an airplane owned by the defendant was engaged in spraying mesquites in order to kill the same on a pasture adjoining plaintiff's cotton field, which is located in Fisher County; that some of the spray used by the defendant was blown over into his field by the wind; and that such spray did damage to his cotton. Defendant filed a plea of privilege. Plaintiff thereupon filed a controverting plea, asserting therein that venue was properly laid in Fisher County under Subdivision 9 of Article 1995 of the Revised Civil Statutes, which provides:

" 'A suit based upon a crime, offense, or trespass may be brought in the county where such crime, offense, or trespass was committed, whether committed by the defendant or by his agent or representative, or in the county where the defendant has his domicile.'

"The trial court overruled defendant's plea of privilege and it is from the order overruling such plea of privilege that the defendant appeals."

Appellant contends that the court erred in overruling his plea of privilege (1) because the evidence was insufficient to establish negligence on the part of appellant; (2) because there was no evidence that appellant was guilty of a negligent act; (3) because the evidence was insufficient to establish proximate cause; (4) because there was no evidence tending to establish proximate cause; (5) because the evidence was insufficient to establish any causal connection between defendant's act and the damages sustained; (6) because there was no evidence tending to establish any causal connection between defendant's act and the damages sustained.

Appellee, in 1952, was engaged in raising cotton in Fisher County. He had a field of cotton consisting of 96 acres which was adjacent to a tract of land owned by Luke Huddleston on which was growing mesquite trees. On or about June 30, 1952, an airplane owned and operated by appellant was being used for the purpose of spraying the pasture land owned by Huddleston for the purpose of killing the mesquite timber. Appellee observed the plane flying across the Huddleston land between nine and ten o'clock on the morning of June 30th and at which time the cotton growing on appellee's land was in good condition. A wind was blowing from the direction where the plane was being operated toward the land where the cotton field of appellee was situated. Appellee testified that he examined his cotton late in the evening of the same day and testified as follows as to what his examination disclosed:

"Q. What, if anything, did you notice about the condition of your cotton at that time? A. It looked wilted, and looked like kind of a frost had hit it.

"Q. Had there been any frost that day? A. No, sir.

"Q. Did you look at your cotton closely to see if you could see any insects? A. Yes, sir.

"Q. Did you see any insects, or any trace of insects on the cotton? A. No, ma'am.

"Q. Had you looked at your cotton on the day before June 30? A. Yes, sir.

"Q. Was all your cotton in good shape? A. Yes.

"Q. Was there any evidence of any kind of damage to your cotton? A. No.

"Q. And you looked at it next on the afternoon of June 30? A. Yes, sir.

"Q. Describe to the Court the nature of the damage you found to your cotton at that time. A. Well, it seemed that the leaves was wilted, and it seemed like it was just like frost had hit it. The cotton was wilted.

"Q. Was all the cotton, all over the field, wilted? A. No, Ma'am.

"Q. Where did the most cotton seem to be wilted? A. On the east portion of the field.

"Q. Is that next to the mesquites? A. Yes, ma'am.

"Q. Was there some damage to all of your field? A. Yes, ma'am.

"Q. All right, now, did that cotton develop, or did it recover from that wilted condition? A. No, ma'am.

"Q. Well, describe to the Court the injury in the development of the cotton that you noticed. A. Well, the forms later just dried up, didn't mature.

"Q. Is that normal for cotton? A. No, ma'am."

There is evidence that the spray used by appellant did kill the mesquite timber within 60 feet of defendant's cotton. Appellee testified that he harvested only 100 pounds of lint cotton from the 40 acres which was nearest the place where the plane was used in spraying the mesquite timber. He further testified he harvested 1,850 pounds of lint cotton off the west 60 acres of his tract of cotton. There is evidence that the cotton on the entire field was in practically the same condition prior to the time the spray was used nearby. The cotton that was nearest the place where the mesquite timber was killed produced far less than the cotton in the other part of the tract of land. This we consider a strong circumstance tending to show that the spray used by appellant in killing the timber also injured the cotton of appellee. Appellee testified that there was enough rainfall on his cotton to enable it to grow and make a normal crop. There is also evidence that appellant knew of the location of appellee's cotton field and that he waited approximately one week to begin the spraying of the Huddleston pasture "waiting for the wind to settle."

Appellant offered no evidence. He contends that there is no evidence tending to show that the substance used for the purpose of killing the mesquite timber was poisonous to cotton. Appellant was in posession of the facts and was in position to throw light on this issue. If the spray used to kill the mesquite timber would not injure cotton appellant was in position to produce this evidence on the trial.

"It is true that appellant's failure to testify cannot be taken as supplying the necessary proof to establish these issues against him, but if the evidence adduced by appellee has some probative force to support a reasonable inference against him on these issues, it is a circumstance to be considered in evaluating the evidence that appellant failed to produce his testimony thereon, as it is to be presumed that if his evidence did not tend to support a finding adverse to him on such issue, he would have produced it. Traylor v. Brentzel, Tex. Civ.App.1949, 218 S.W.2d 261, page 263. See also Atex Construction Co. v.

Farrow, Tex.Civ.App.1934, 71 S.W.2d 323; 17 Tex.Jur. 306, Sec. 87."

We believe appellee met the burden imposed upon him to establish a trespass committed by appellant in Fisher County as required by Section 9 of Article 1995, Vernon's Annotated Revised Civil Statutes. The evidence is sufficient to support the implied findings of the trial court and the judgment.

The judgment of the trial court is affirmed.